713 So.2d 806 (1998)
Jerrold B. PETERSON, et ux., Michele C. Peterson, Individually, and on Behalf of the late Adrienne Louise Peterson and Jerrold B. Peterson, as Natural Tutor on Behalf of Elizabeth Peterson
v.
G. H. BASS AND CO., INC., Henry Cerise and Mary Luria Cerise.
No. 97-CA-2843.
Court of Appeal of Louisiana, Fourth Circuit.
May 20, 1998.
*807 John J. Cummings, III, Richard M. Martin, Jr., Cummings, Cummings, Dudenhefer & Martin, New Orleans, for Plaintiffs-Appellants.
Raymond J. Salassi, Jr., Michele W. Crosby, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, for Defendant-Appellee Phillips-Van Heusen Corp. d/b/a G.H. Bass & Co.
Lawrence J. Ernst, Scott P. Yount, Christovich & Kearney, L.L.P., New Orleans, for Defendant-Appellee Vanguard Chemical Corp.
Brian Bossier, Blue Williams, L.L.P., Metairie, for Defendant-Appellee Kiwi Brands, Inc.
Scott G. Jones, Hulse & Wanek, New Orleans, for Defendants-Appellees Henry and Mary Cerise.
Before BARRY, BYRNES and WALTZER, JJ.
WALTZER, Judge.
Plaintiffs, Jerrold and Michele Peterson, appeal the dismissal by summary judgment of their claims against both the manufacturers of a shoe care product misused by their two minor daughters and the girls' grandparents with whom the teenagers were spending the night when they suffered serious injury.

FACTS
In August 1992, Adrienne Peterson was fifteen years old and her sister Elizabeth was thirteen years old. On 25 August 1992, the Peterson girls, with their then fifteen year old cousin Leslie Cerise, decided to spend the evening with their maternal grandparents, Henry and Mary Cerise, with whom they frequently visited. With their grandparents in the house, the three teenagers surreptitiously inhaled concentrated vapors from two separate products. The two products, "Bass Water & Stain Repellant" and "Bass Protect-All", used by the girls were physically manufactured by two defendants, Vanguard Chemical Corporation and Kiwi Brands, Inc., and sold with a third defendant's (G.H. Bass & Company) label.
The girls intentionally hid this misconduct from their grandparents by secreting themselves in closed bedrooms, by hiding the first *808 product which Adrienne Peterson brought from her home and by quietly stealing the second product from their grandparents' closet. They intentionally misused the two products for an improper purpose, to "get high". The three teenagers consumed the first product in this manner, and then they started this abuse with the second product but stopped only when they feared discovery by their grandfather. Moreover, the girls disappeared from their grandparents' presence for a short period of time, inhaled most of the first product, reappeared, visited with their grandmother, baked and ate a pizza, watched their grandparents go to bed, and then began again with their dangerous misconduct. Apparently, the three girls had experimented with these products on several occasions prior to 25 August 1992.
After collapsing, Adrienne Peterson was taken to the hospital where she was pronounced dead. An autopsy revealed that she died from injuries caused by the inhalation. Leslie Cerise and Elizabeth Peterson were hospitalized after the incident.

STATEMENT OF THE CASE
The Petersons allege that the shoe care products were defective in design and warning and that the grandparents negligently supervised the teenagers. Each defendant moved for summary judgment. The trial court dismissed the Peterson's claims against Bass, Vanguard, Kiwi, and the Cerises on 1 October 1997. The Petersons timely appeal this judgment.

STANDARD OF REVIEW
Summary judgments are reviewed de novo. Baldwin v. Kikas, 93-1739 (La.App. 4 Cir. 4/14/94); 635 So.2d 1324, 1327. After recent amendments to LSA-C.C.P. art. 966, summary judgments are now favored. LSA-C.C.P. art. 966 also provides that summary judgment should be granted when the party who bears the burden of proof of an essential element of a cause of action or defense fails to come forward with sufficient proof of that element after the mover, who will not bear the burden of proof at trial, has affirmatively shown the court that "there is an absence of factual support" for one or more essential elements.

FIRST ASSIGNMENT OF ERROR: The trial court erred by finding that Bass was a "manufacturer" under the LSA-R.S. 9:2800.53(1)(a), and thus concluding that the Louisiana Products Liability Act (LPLA) is the Petersons exclusive remedy against all defendants.
The Petersons argue that the trial court expanded the statutory definition of "manufacturer" and that the LPLA does not apply to Bass. LSA-R.S. 9:2800.53(1) specifically defines "[m]anufacturer". The LPLA provides, in pertinent part, that a "[m]anufacturer" includes "A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product." LSA-R.S. 9:2800(1)(a). [Emphasis added.] The trial court found and explained in its written Reasons that "the cans are sufficiently labelled to make it seem that Bass is the `manufacturer' and not just the `seller'."
Both the can of "Water & Stain Protector" and the can of "Protect-All" carry labels on which Bass is clearly identified. The two products' labels identify Bass in large bold print on the front of each can. Moreover, the two witnesses, Elizabeth Peterson and Leslie Cerise, to the accident testified that they remembered very little about the products' labels, except that the labels identified Bass as the maker. Even though the products' labels clearly state in fine print on the back of the cans that these products were "Manufactured for G.H. Bass & Co.,", we find no error with the trial court's conclusion that Bass "holds" itself out to be the manufacturer of the two shoe care products and thus is a "[m]anufacturer" under the LPLA.

SECOND ASSIGNMENT OF ERROR: The trial court erred in dismissing all of the Peterson's claims against Bass, Kiwi and Vanguard after it concluded that the girls'"intentional misuse of the products" was not a "reasonably anticipated use".
After concluding that Bass, Kiwi and Vanguard were "[m]anufacturers" as the LPLA defines that term, the Petersons' only remedy against these defendants is the LPLA. LSA-R.S. 9:2800.52 provides, in pertinent part, "This Chapter establishes the exclusive theories of liability for manufacturers for *809 damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter."
Because LSA-C.C. art. 2315.3, authorizing awards of punitive damages in certain circumstances, existed long before the LPLA, the essential elements outlined in the LPLA must be proven before the issue, whether punitive damages are allowed, may even be addressed. Thus, if the Petersons are to continue their claims for damages against these manufacturers, they must establish the elements of a cause of action under the LPLA.
The LPLA requires proof that the claimant's "damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." LSA-R.S. 9:2800.54(A). In order to survive the motions for summary judgment by Bass, Kiwi and Vanguard, the Petersons must prove that the teenagers' "huffing" (inhaling to get high) was a "reasonably anticipated use" under the LPLA.
The LPLA defines "reasonably anticipated use". LSA-R.S. 9:2800.53(7) provides, this term "means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." The LPLA defines a "reasonably anticipated use" in objective terms. This inquiry focuses on whether the claimants were engaged in a "reasonably anticipated use" and not whether plaintiff was a "reasonably anticipated user". Dunne v. Wall-Mart Stores, Inc., 95-2047 (La.App. 1 Cir. 9/1096); 679 So.2d 1034, 1037. Both the Bass "Water and Stain Protector" and the "Bass Protect-All" labels explain that the products provide "an invisible protective coating that allows the article to breath" and restores water and stain repellency. Thus, after reviewing the entire record, we find no error in the trial court's conclusion that the girls' misuse of the two products was not a "reasonably anticipated use" by an "ordinary person". Accordingly, because the Petersons offered no evidence of an essential element of their cause of action against Bass, Kiwi, and Vanguard under the LPLA, all of the claims against these defendants were properly dismissed by summary judgment.

THIRD ASSIGNMENT OF ERROR: The trial court erred by dismissing the Petersons' claims against the teenagers' grandparents, the Cerises, after the plaintiffs failed to offer any evidence that these defendants breached any duty.
The trial court concluded that "The grandparents do not have a duty that would require them to supervise their teenage grandchildren and guard against the teenage grandchildren's intentional misuse of a product such as Water & Stain Protector or Protect-All." The Petersons allege that the Cerises had a duty to supervise their teenage grandchildren since the girls were in the grandparents' home without their parents for the few hours when they secretly misused these products. Plaintiffs rely on no authority for their proposition that these grandparents owed such a duty. However, generally, a person who undertakes the control and supervision of a child has a duty to use reasonable care to protect the child from certain injury. Doe v. Jeansonne, 97-795 (La.App. 3 Cir. 12/10/97); 704 So.2d 1240, 1245. Such a custodian is not the insurer of the child, and he is required to exercise reasonable care commensurate with a reasonably foreseeable risk of harm. Id. The Petersons do not allege that the Cerises knew or should have known of the risk that the girls used any product to get high. Furthermore, the teenagers brought one of the products from their home into their grandparents' home without the elders' knowledge or approval, and then the girls stole the second can from their grandparents' closet. The record also shows that the alleged victims had similarly misbehaved under their parents' supervision, yet the Petersons fail to offer any evidence that they had warned the grandparents of this risk. Moreover, the plaintiffs offered no evidence, other than their arguments that this danger is generally known to the world, that the Cerises had any indication of the girls' misconduct before Adrienne's collapse. Finally, the grandparents remained with the girls throughout the *810 evening. The teenagers were not left alone in the house on this visit, and the girls and the grandparents mingled throughout the evening. For these reasons, we find no error in the trial court's conclusion that the grandparents, as a matter of law, had not breached any duty in their supervision of the teenagers who were spending one night in the grandparents' home and were intentionally hiding their obvious misconduct from the Cerises. Accordingly, we affirm the trial court's dismissal of all claims, including the claim for punitive damages, against Henry and Mary Cerise.

CONCLUSION
The trial court's summary judgment dismissing the Petersons' claims against Bass, Kiwi and Vanguard and the Cerises is affirmed.
AFFIRMED.