762 So.2d 1214 (2000)
Angela H. BUTZ and Russell Butz
v.
James P. LYNCH, the Estate of Patrick O. Lynch, State Farm Mutual Automobile Insurance Co., and State Farm Fire and Casualty Company.
Francis R. White, III, on Behalf of His Son, Francis Randall White, IV
v.
State Farm Automobile Mutual Insurance Company, State Farm Fire and Casualty Co., James P. Lynch, and the Estate of Patrick O. Lynch.
Nos. 99 CA 1070, 99 CA 1071.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
Rehearing Denied August 22, 2000.
*1215 Paul L. Katz, Covington, Charles A. Verderame, Metairie, for Appellants Plaintiffs Angela H. Butz and Russell Butz.
Donald R. Abaunza, Kathleen F. Hobson, New Orleans, for Appellees Defendants.
BEFORE: FOIL, WHIPPLE and GUIDRY, JJ.
FOIL, Judge.
The only issue in this appeal is whether the intentional inhalation of the contents of a can of air brush propellant to produce an intoxicating effect while operating a motor vehicle is a "reasonably anticipated use" of that product by an "ordinary person." The trial court ruled as a matter of law that this conduct did not constitute a reasonably anticipated use of the product. We affirm.

BACKGROUND
These consolidated lawsuits arose out of a vehicular accident that occurred on October 15, 1995 on U.S. Highway 190 in St. Tammany Parish. Angela Butz was driving a van south on Highway 190 while Patrick Lynch was driving a BMW convertible north on Highway 190. Patrick Lynch left the northbound roadway, crossed the neutral ground separating the lanes of travel and entered the southbound lane directly into the path of the vehicle driven by Mrs. Butz. Mrs. Butz sustained severe injuries in the accident, from which she died three years later. Patrick Lynch and his guest passenger, Michael Bacon, died at the scene.
This lawsuit was originally filed by Mrs. Butz and her husband against the parents of Patrick Lynch and Michael Bacon.[1] A second lawsuit was filed by Mrs. Butz's former husband, Francis R. White, III, on behalf of their son, Francis Randall White, IV, against the parents of Patrick Lynch. Both sets of plaintiffs added The Testor Corporation and its parent company, RPM, Inc., as defendants.
Testor manufactures and markets hobby items such as models, paints, glues and other model accessories. During the late 1980's, Testor began marketing air brushes, which allow for finer detailed application of paints. An essential component of an air brush is a propellant system, which forces the paint through the brush. In 1990, Testor began marketing an aerosol air brush propellant in a hand-held canister for use when painting through an air brush or sprayer. The product, called Testor Ozone Safe Air Brush Propellant (OSP), is sold primarily through chain, *1216 hobby, craft and home decor stores. OSP is a specialized blend of organic liquefied propellants. When high concentrations are intentionally inhaled or "huffed" (as the practice is commonly referred to), the amount of oxygen to the brain is reduced, which produces a "high" feeling. Continued intentional over-exposure to the product can result in unconsciousness, coma and possible death. From the time of its introduction, OSP carried a warning label advising consumers that "deliberate misuse by concentrating or inhaling contents can be harmful or fatal."
For the purpose of this appeal, it is undisputed that Patrick Lynch obtained a can of OSP and intentionally inhaled the contents of that can while driving on Highway 190 for the purpose of "getting high." It is further undisputed that a chemical in the product caused him to lose consciousness, which caused his vehicle to leave the roadway and enter the path of the vehicle driven by Mrs. Butz.
In their petition, plaintiffs alleged that OSP was unreasonably dangerous in design. They averred that Testor knew or should have known three years before the accident that teenagers such as Patrick Lynch were using the product to get high and averred such uses were "reasonably anticipated uses" under the Louisiana Products Liability Act (LPLA). Plaintiffs asserted that Testor was on notice that a secondary market for its product had developed among young people who intentionally inhaled the product for the purpose of experiencing an intoxicating-like effect. They further alleged that Testor knew about an additive, oil of mustard, a chemical found in horseradish, which could have prevented or made it unlikely that anyone would have intentionally abused the product. However, plaintiffs claimed, Testor unreasonably waited until 1996 (the year after this accident occurred) to modify the product to add oil of mustard to deter the practice of "huffing" the product.
Testor and RPM filed a motion for summary judgment, claiming that under the LPLA and the jurisprudence interpreting it, an intentional misuse or abuse of a product is excluded from coverage. Among other evidence, they submitted the deposition of a professor of pharmacology who attested that there is a broad spectrum of products sold to the public through grocery stores and the like which can be abused for the purpose of getting high, including common items such as marker pens, rubber cement, air fresheners, canned aerosols, deodorants, hair sprays, spray paint, nail polish remover, lighter fluids and paint thinners.
In opposition to the motion for summary judgment, plaintiffs urged that Testor knew OSP was being used by young persons to get high as early as 1991, long before this accident. They claimed that despite the technological and economic capability to add a deterrent to that product, Testor continued to keep the product on the market unaltered until 1996. Plaintiffs submitted there was substantial evidence to demonstrate that the inhalation of OSP was a "reasonably anticipated use" for the purpose of the LPLA. At the very least, plaintiffs posited, there existed a question of fact as to whether or not inhalation of OSP to get high should be considered a recognized alternative use under the products liability law, precluding the entry of summary judgment.
In support of their claims, plaintiffs filed numerous depositions as well as evidence documenting 30 incidents involving inhalation of OSP that were reported to Testor prior to this accident. Among other things, plaintiffs introduced an affidavit of a doctor who opined that the warning on the OSP can would be ineffective in deterring young adults from inhaling the product and would actually induce sales to those individuals disposed to intoxication on inhalants. They offered the affidavit of a chemical engineer who attested there was no scientific impediment to adding oil of mustard to OSP at the time it was originally placed on the market in 1990, as well as a document showing it would only *1217 cost $.015 to add oil of mustard to a can of OSP. Plaintiffs also relied on evidence showing that in the 1960's, Testor had prior experience with children sniffing its glue products, and added oil of mustard to the glue line to deter those incidents. They also focused on evidence contained in depositions of various Testor representatives showing they knew of the practice of huffing paint products before introducing OSP into their market line, as well as a statement by a Testor CEO who acknowledged that part of the appeal of OSP to those looking for products to get high on were the dire warnings on the side of the can.
The trial court granted the motion for summary judgment, ruling that as a matter of law, the manufacturer was not liable for damages resulting from the intentional misuse of the product. This appeal, taken by plaintiffs, followed.[2]

DISCUSSION
This court reviews summary judgments de novo under the same criteria that governs the trial judge's consideration of whether a summary judgment is appropriate. Robertson v. Northshore Regional Medical Center, 97-2068, p. 5 (La.App. 1 Cir. 9/25/98), 723 So.2d 460, 463. A motion for summary judgment may be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La.Code. Civ. P. art. 966B.
The LPLA provides the exclusive theories of liability for manufacturers for damage caused by their products. La. R.S. 9:2800.52. La. R.S. 9:2800.54 establishes the elements of a cause of action under the statute. The elements, which must be proven by the claimant are (1) the defendant is the manufacturer of the product; (2) the claimant's damage was proximately caused by a characteristic of the product; (3) this characteristic made the product unreasonably dangerous and (4) the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. La. R.S. 9:2800.54 A; Kennedy, John, A Primer on the Louisiana Products Liability Act, 49 La. Law Rev. 565, 583 (1989). In their motion for summary judgment, defendants challenged the ability of plaintiffs to establish that the driver of the vehicle was engaged in a reasonably anticipated use of their product at the time of the collision.
Plaintiffs urge that the summary judgment was improperly entered because they offered overwhelming evidence establishing that Testor knew of the misuses of its product. They contend that Testor's ability to add a deterrent to the product to prevent the intentional abuse is relevant to the issue of reasonably anticipated use. Thus, they urge, given Testor's knowledge of the intentional abuse of its product coupled with the ability to do something about that misuse in the design of the product, Patrick Lynch's intentional abuse of the OSP constitutes a "reasonably anticipated use" under the LPLA.
Much of plaintiffs' argument is directed towards an entirely separate element of a products liability cause, namely, whether the product was unreasonably dangerous because of a design defect. The technological and economic capacity to modify a product to deter a certain use are questions relating to the issue of whether a product is defective in design. The availability of an alternative design is relevant only if the user was engaged in a "reasonably *1218 anticipated use" of the product, for unless that threshold element is satisfied, a manufacturer does not have a legal duty to design its product to prevent such use.
The LPLA defines the term "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. R.S. 9:2800.53(7). This definition is narrower in scope than the pre-LPLA standard, "normal use." The term "normal use" included reasonably foreseeable uses and misuses of a product. Dunne v. Wal-Mart Stores, Inc., 95-2047, p. 4 (La.App. 1 Cir. 9/10/96), 679 So.2d 1034, 1037. The current terminology was incorporated to make it clear that a manufacturer will not be responsible for accounting for every conceivable foreseeable use of a product. Id.; Delphen v. Department of Transportation and Development, 94-1261, pp. 5-6 (La.App. 4 Cir. 5/24/95), 657 So.2d 328, 333; Kennedy, A Primer on the Louisiana Products Liability Act, 49 La. Law. Rev. at p. 586.
The term as defined in the LPLA requires a court to focus on the manner in which the product was used. The standard for determining a reasonably anticipated use is an objective one (an ordinary person in the same or similar circumstances). Thus, this objective standard mandates that a court ask whether the person was engaged in a reasonably anticipated use of the product, not whether that person was a reasonably anticipated user. Peterson v. G.H. Bass and Co., Inc., 97-2843, p. 5 (La.App. 4 Cir. 5/20/98), 713 So.2d 806, 809, writ denied, 98-1645 (La.10/16/98), 727 So.2d 441; Dunne v. Wal-Mart Stores, Inc., 95-2047 at 5, 679 So.2d at 1037. See also Kampen v. American Isuzu Motors, Inc., 119 F.3d 1193, 1198 (5th Cir.1997). Under the LPLA, a manufacturer is liable only for those uses it should reasonably expect of an ordinary consumer. Kennedy, A. Primer on the Louisiana Products Liability Act, 49 La. Law Rev. at 586.
Employing the appropriate standard, two Louisiana appellate courts recently held that the intentional abuse of a chemical product for the purpose of getting high is not, as a matter of law, a reasonably anticipated use of that product. In Peterson v. G.H. Bass and Co., Inc., 97-2843, 713 So.2d 806, three teenagers inhaled the vapors of shoe care products to get high. The court affirmed the grant of summary judgment in favor of a manufacturer, concluding that the intentional misuse of the shoe care products was not a reasonably anticipated use by an ordinary person.
In Kelley v. Hanover Insurance Co., 98-506 (La.App. 5 Cir. 11/25/98), 722 So.2d 1133, a teenager died after intentionally inhaling propane gas from a plastic bag. The court affirmed the grant of summary judgment in favor of the manufacturer. Citing the Peterson case, the court equated "reasonably anticipated use" with that type of use a "manufacturer should reasonably expect of a reasonable person." The court noted that although the plaintiff introduced articles dealing with teenagers' inhalation of various commercial products, that information was not relevant to the question of what uses are reasonably anticipated.
Similarly, we find Testor's knowledge of the potential and actual intentional abuse of its product does not create a question of fact on the question of reasonably anticipated use. The OSP warned of the grave danger of inhaling the contents. The user in this case chose to ignore those warnings and instead intentionally abused the product for the illicit purpose of experiencing the intoxicating effects of one of its chemicals while driving on a major highway. It was the users' intentional abuse of the product and illegal conduct that caused the accident to ensue.
The intentional inhalation of OSP contrary to the warnings on the product under the circumstances of this case does not constitute a reasonable use of OSP. Accordingly, we hold as a matter of law, *1219 Patrick Lynch's use of OSP did not constitute a reasonably anticipated use of that product by an ordinary person, and find that the trial court properly granted the motion for summary judgment.

CONCLUSION
Based on the foregoing, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellants.
AFFIRMED.
GUIDRY, J., dissents.
NOTES
[1] This court affirmed the granting of a summary judgment in favor of the parents of Michael Bacon in Butz v. Lynch, 97-2166 (La.App. 1 Cir. 4/8/98), 710 So.2d 1171, writ denied, 98-1247 (La.6/19/98), 721 So.2d 473.
[2] We note that following Angela Butz's death, her former husband filed a supplemental petition seeking to be substituted as the tutor of the minor child to pursue Angela's claim for damages. Randall Butz also filed a supplemental petition seeking wrongful death damages and asking to be substituted to pursue Angela's claim for damages. This appeal was filed by Russell Butz individually and as Angela's curator along with Francis White on behalf of the minor.