809 So.2d 287 (2001)
Archie JOHNSON
v.
T.L. JAMES & COMPANY, INC.; T.L. James Industrial Constructors, Inc.; Ralph M. Parsons Company, Inc.; Caterpillar, Inc.; and Woodward-Clyde Consultants, Inc.
No. 2000 CA 1365.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
*288 Joseph J. McKernan, Kirby J. Guidry, Baton Rouge, Counsel for Plaintiff/Appellant, Archie Johnson.
Patrick J. O'Cain, New Orleans, Counsel for Defendant/Appellee, Caterpillar, Inc.
Mark L. Riley, Lafayette, Counsel for Intervenor/Appellant, Highlands Insurance Co.
Stephen R. Wilson, Baton Rouge, Counsel for Defendant, T.L. James & Company, Inc.
Michael E. Wanek, New Orleans, Counsel for Defendant (dismissed), Woodward-Clyde Consultants, Inc.
John E. Heinrich, Baton Rouge, Counsel for Defendant (dismissed), T.L. James Industrial Constructors, Inc.
John B Dunlap, III, Baton Rouge, Counsel for Defendant (dismissed), Ralph M. Parsons Company.
Before: FOGG, PETTIGREW, JJ. and SHORTESS, J. Pro Tempore.[1]
MELVIN SHORTESS, Judge Pro Tem.
In this case, appellant, Archie Johnson (plaintiff), appeals from a judgment of the trial court granting summary judgment in favor of appellee, Caterpillar, Inc. (hereinafter "Caterpillar") insofar as it pertains to plaintiff's claims that the subject excavator was unreasonably dangerous in design pursuant to the Louisiana Products Liability Act (hereinafter LPLA). For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
This suit arises from an accident that occurred on June 25, 1995. Plaintiff was standing next to his truck when a Caterpillar 225B excavator crushed him when it backed into him and his truck. The backup alarm had become disconnected, and therefore did not sound to warn plaintiff.[2] Plaintiff suffered multiple severe injuries and has brought suit against Caterpillar seeking compensation for his losses under the LPLA. Also, not relevant to this appeal, plaintiff named four other defendants on other theories.
Three of the defendants were dismissed leaving Caterpillar and T.L. James & Company, Inc. (hereinafter T.L. James), who both subsequently filed motions for summary judgment. By judgment dated August 4, 1999, the T.L. James & Company motion for summary judgment was denied and the Caterpillar motion for summary judgment was granted as to plaintiffs claim that the 225B excavator was unreasonably dangerous in design *289 under the LPLA. However, the issue of inadequate warning was deferred in order for the parties to prepare memoranda on that issue. The trial court also deferred ruling on the admissibility of Frederick Brooks' testimony as an expert.
In written reasons for judgment, the trial court stated that the plaintiff alleges that the back-up alarm was not working because the wiring had become snagged and disconnected from the prong connector of the alarm while working over debris. Noting a picture of the 225B excavator after the accident revealed lengths of wire coiled and attached to the undercarriage, the trial court found that plaintiff is unable to show that the wiring existed as pictured when it left Caterpillar seven years ago, or was due to a reasonably anticipated alteration or modification. It is from this judgment that plaintiff now appeals assigning the following lone assignment of error:
The trial court erred in finding that the plaintiff must prove that the wires were loose and hanging below the undercarriage when the excavator left Caterpillar's control, since plaintiff does not contend that this characteristic was the "defect" which caused his injures.
Plaintiff argues on appeal that the grant of summary judgment was in error because he does not allege the defect to be the manner in which the wires were run along the undercarriage. Plaintiff contends the 225B excavator is unreasonably dangerous in design because the connector used on the wiring to the back-up alarm was inadequate. Responding, Caterpillar argues the summary judgment is proper in view of the record as a whole.

APPLICABLE LAW

A. SUMMARY JUDGMENT
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action. Accordingly, the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that [the] mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B). Appellate courts review summary judgment de novo under the same criteria that governs the trial court's consideration of whether summary judgment is appropriate. Terrebonne v. Floyd, 99-1036, p. 5 (La.App. 1st Cir.5/23/00), 767 So.2d 754, 756-757.
The burden of proof remains on the mover to show there is a lack of genuine issue as to a material fact. LSA-C.C.P. art. 966(C)(2). The mover need only prove absence of factual support for one or more elements essential to plaintiff's claim. LSA-C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2).

B. LOUISIANA PRODUCTS LIABILITY ACT
The LPLA provides the exclusive theories of liability for manufacturers for damage caused by their products. LSA-R.S. 9:2800.52. The elements of a cause of action that must be proven by the claimant are: (1) the defendant is the manufacturer of the product; (2) the claimant's damage was proximately caused by a characteristic of the product; (3) this characteristic made the product unreasonably dangerous; and (4) the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. LSA-R.S. *290 9:2800.54; Butz v. Lynch, 99-1070, 99-1071, p. 5 (La.App. 1st Cir.6/23/00), 762 So.2d 1214, 1217, writ denied, 2000-2660 (La.11/17/00), 774 So.2d 980.
A product is unreasonably dangerous if and only if the product is unreasonably dangerous: (1) in construction or composition, (2) in design, (3) because an adequate warning about the product has not been provided, or (4) because it does not conform to an express warranty. LSA-R.S. 9:2800.54(B).
If design or inadequate warning is alleged, another required element under the LPLA is that the unreasonably dangerous characteristic must have existed at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product. See LSA-R.S. 9:2800.54(C). Plaintiff argues the 225B excavator was unreasonably dangerous in design at the time it left Caterpillar's control.
Louisiana Revised Statute 9:2800.56 provides the conditions under which a product may be considered unreasonably dangerous in design as follows:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.
This section requires a dual showing. First, the plaintiff must show that: (1) an alternative design existed for the product at the time it left the manufacturer's control, and (2) the alternative design was capable of preventing the claimant's damage. However, even if there existed an alternative product capable of preventing the damage, a plaintiff must also meet the second requirement, the so called "risk-utility" analysis, in which the utility of the product is weighed against the risk of harm. Bernard v. Ferrellgas, Inc., 96-621, p. 7 (La.App. 3rd Cir.2/5/97), 689 So.2d 554, 558.

DISCUSSION
In determining whether plaintiff offered enough factual support to create a genuine issue of material fact in order to preclude summary judgment, Caterpillar contends there is no factual support for, and therefore plaintiff can not prove (1) the unreasonably dangerous characteristic existed at the time the 225B excavator left Caterpillar's control; (2) an effective alternative existed; or (3) the elements required to perform the risk-utility analysis as required by the LPLA.

DID THE UNREASONABLY DANGEROUS CHARACTERISTIC EXIST AT THE TIME THE 225B EXCAVATOR LEFT CATERPILLAR'S CONTROL?
Caterpillar sold the 225B excavator in August of 1988. Since then, it had been used many times and mechanics have worked on it often. Caterpillar admits the guard for the undercarriage, which would serve as some protection to the wiring, is sold as an accessory and is not required for the 225B excavator to operate. However, this 225B excavator was sold with a guard, which had been removed prior to the accident. Caterpillar contends that since the 225B excavator was old and had undergone many hours of use and service *291 repairs, plaintiff can not prove the unreasonably dangerous condition existed when it left Caterpillar. We disagree.
Mr. Frederick Brooks, plaintiff's expert, opined that the design of the connector and wiring system of the 225B excavator made it unreasonably dangerous. Mr. Brooks testified:
My first opinion is that the wire that supplies energy to the travel alarm should have been protected instead of just being run loosely under the undercarriage of the trackhoe. Second, the base plate or the bottom guard that was originally installed with the excavator should have remained in place which would have afforded some protection to the wiring that was loose basically, or exposed is a better word under the undercarriage that supplied energy to the travel alarm. Those are the two basic opinions.
The subset of opinions under the wiring being better protected would be to install it in a wireway or a conduit which would be the mechanism for protection. The connectors that we used could have been more substantial and less subject to separation by simply being a locking type connector, or alternatively clips or keepers would have been put across the connectors to aid in preventing the separation, and thereafter the dysfunction of the travel alarm.
Mr. Brooks' opinion was summed up in his affidavit as follows: "[T]he electrical circuit providing electrical current to the travel alarm contains a connection which is easily disconnected because it is not a locking-type connector. The connection can be pulled apart by simply applying a force to the wires on each side of the connector." Brooks used an exemplar wiring harness that matches the connector found on the 225B excavator in order to conduct his research. Caterpillar has not countered Mr. Brooks' testimony. Moreover Caterpillar admits that these are the wire components and assembly it used and still uses on this machine, constituting factual support for plaintiffs allegation that the design defect existed when the 225B excavator left Caterpillar. This uncontroverted fact, coupled with Mr. Brooks' opinion, created an issue of material fact that goes to the very core of this cause of action.

IS THERE AN EFFECTIVE ALTERNATIVE?
A plaintiff in an action under defective design must show there existed an alternative design that would have prevented his damage while the defendant may use the unfeasibility of the alternative design as a defense. 12 William E. Crawford, Louisiana Law Treatise: Tort Law § 16.23 (2000).
Mr. Brooks asserts that substantial connectors exist that are more appropriate and in fact, were used elsewhere on the 225B excavator. However, Caterpillar asserts that another connector could not be any more effective in this situation, where the wiring was snagged by tree branches or other debris under the machine. These conflicting assertions create a dispute as to a genuine issue of material fact. Mr. Brooks stated in his deposition that it was his opinion that a more substantial connector was needed, and he gave examples, i.e. locking type or using clips or keepers, and stated that these types of alternative designs would "prevent ... the connectors from being pulled apart." Therefore, plaintiff has set forth factual support for the use of an effective alternative design.
The implication certainly was created that these would be more effective than the connector used. Plaintiff has set forth factual support for the use of an effective alternative design.

*292 CAN PLAINTIFF SET FORTH THE ELEMENTS REQUIRED TO PERFORM THE RISK-UTILITY TEST?
Caterpillar contends there is a lack of factual support for the required risk-utility analysis. Specifically, Caterpillar asserts that plaintiff can not establish the risk of harm element because there has been no history of similar accidents. This assertion is based on Mr. Brooks' denial of any knowledge of other instances when the alarm became disconnected and failed to sound. Caterpillar argues that plaintiff has failed to meet his burden of proof required by summary judgment procedure to come forward with factual support of his claim. However, we disagree.
We find plaintiff has adequately satisfied the risk-utility analysis. We have cited with agreement Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 184 (5th Cir.1990), cert. denied, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993), wherein it was noted that "there may be cases in which the judge or the jury, by relying on background knowledge and `common sense,' can `fill in the gaps' in the plaintiffs case, estimating the extent of the risk avoided, the costs of implementing the proposed design change, or the adverse effects of the design modification on the utility of the machine." McKey v. General Motors Corporation, 96-0755, p. 8, n.2 (La. App. 1st Cir.2/14/97), 691 So.2d 164, 170, n. 2. However, as noted in McKey, quoting Lavespere, "[T]he product itself, or at least the design feature in question, must be relatively uncomplicated, and the implications of the change in design must be such that a layman could readily grasp them." McKey, 96-0755 at p. 8, n. 2, 691 So.2d at 170, n. 2.
Plaintiff produced evidence that a more substantial connector was used elsewhere on the 225B excavator. "Filling in the gaps" as to the rest of the risk-utility analysis with our "background knowledge" of this uncomplicated design feature, we can estimate the cost of implementing the alternative design is low in light of the risk of the alarm becoming disconnected and, without a warning, the 225B excavator backing into an unaware victim. Thus, there is factual support that the risk-utility test under LSA-R.S. 9:2800.56 is satisfied in plaintiffs favor, and summary judgment is inappropriate.
We find merit to this assignment.

CONCLUSION
For the above reasons, we reverse that portion of the trial court's judgment of August 4, 1999, granting summary judgment that dismissed plaintiffs LPLA claim that the Caterpillar 225B excavator was unreasonably dangerous in design and remand the matter to the trial court for further proceedings. Costs in this matter are assessed against the appellee, Caterpillar, Inc.
REVERSED IN PART AND REMANDED.
NOTES
[1] Judge Melvin Shortess, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Caterpillar assumes for the purpose of its motion for summary judgment that the wiring became disconnected due to tree limbs and debris under the excavator.