# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 12-399

**ADAM DWAYNE GUILLORY, ET UX.**

**VERSUS**

**CONSTANZA FARMS, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 66,773
HONORABLE J. LARRY VIDRINE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

Guy O. Mitchell, III
Mitchell Law Offices
225 Court Street
Ville Platte, Louisiana 70586-4492
(337) 363-0400
Counsel for Plaintiffs/Appellees:
       Adam Dwayne Guillory
       Jennifer Guillory Guillory

Patrick John O'Cain
McGlinchey Stafford, PLLC
601 Poydras Street, Suite 1200
New Orleans, Louisiana  70130
(504) 586-1200
Counsel for Defendant/Appellant:
       CNH America, LLC

**Steven J. Bienvenu**
**Falgoust, Caviness & Bienvenu**
**Post Office Box 1450**
**Opelousas, Louisiana  70571**
**(337) 942-5811**
**Counsel for Defendant/Appellee:**
        **Waven LaFleur**

**KEATY, Judge.**

The trial court found Defendant's actions marketing a product inherently dangerous in its normal use and failing to utilize an alternative design violates Louisiana products liability law and rendered summary judgment in favor of Plaintiff[1] in accordance with that interpretation. From this judgment, Defendant appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On March 4, 2004, Plaintiff, Adam Guillory, was operating a Case backhoe (hereinafter sometimes "Case" or "backhoe") owned by his employer, the Evangeline Parish Police Jury (EPPJ). Mr. Guillory was cleaning clogged culverts in Evangeline Parish, Louisiana, when the hydraulic lines on top of the backhoe began spewing hydraulic fluid. The hydraulic lines were attached by clamps which either separated or broke free causing the hydraulic fluid to flow freely. While Mr. Guillory was attempting to tighten the leaking line with vice grips, he slipped, fell, and sustained injury.

As a result of his accident, the Guillorys sued multiple defendants, including CNH America, L.L.C. (CNH), the backhoe's manufacturer. Mr. Guillory claimed the backhoe was defective and asserted that CNH was aware of an alternative design which could have better protected the line. The trial court thereafter twice denied motions for summary judgment filed by CNH on August 25, 2005, and August 20, 2009. On both occasions, the trial court found the record presented "genuine issues of material fact" that precluded summary judgment.

On July 1, 2011, Mr. Guillory filed his own motion for summary judgment on the issue of CNH's liability under the Louisiana Products Liability Act (LPLA).

---

[1] Although both Adam and Jennifer Guillory originally filed suit in this matter, the judgment that is the subject of this appeal was granted in favor of Adam Guillory only.

La.R.S. 9:2800.53. The trial court subsequently granted summary judgment in favor of Mr. Guillory at the hearing on July 25, 2011.

Defendant now appeals, contending the trial court was incorrect in granting Mr. Guillory's summary judgment on the issue of CNH's liability under the LPLA.

**DISCUSSION**

This court reviews summary judgment de novo under the same criteria that governs the trial court's consideration of whether summary judgment is appropriate. *Butz v. Lynch*, 99-1070, 99-1071 (La.App. 1 Cir. 6/23/00), 762 So.2d 1214. A motion for summary judgment may be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. *Id.*; La.Code Civ.P. art. 966(B).

The LPLA provides the exclusive theories of liability for manufacturers for damage caused by their products. *Lynch*, 762 So.2d 1214; La.R.S. 9:2800.52. Louisiana Revised Statutes 9:2800.54 establishes the elements of a cause of action under the statute. The following four elements must be proven by the claimant in order to establish liability under the LPLA: (1) the defendant is the manufacturer of the product; (2) the claimant's damage was proximately caused by a characteristic of the product; (3) this characteristic made the product unreasonably dangerous; and (4) the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. *Lynch*, 762 So.2d 1214; La.R.S. 9:2800.54. In its appeal, CNH challenges the ability of Mr. Guillory to establish that its actions in marketing a product that was inherently dangerous in its normal use and in failing to utilize an alternative design would have prevented his injury.

2

**LPLA**

CNH alleges that Mr. Guillory's accident was not proximately caused by a characteristic of the backhoe nor did the accident arise out of a reasonably anticipated use of the backhoe such that Mr. Guillory's claim does not satisfy the requirements of the LPLA.

*Causation*

Upon review, Mr. Guillory's uncontradicted deposition testimony shows he was using a backhoe owned by his employer, the EPPJ, to clean clogged culverts. As he was cleaning the culverts, the steel hydraulic lines on top of the backhoe began spewing hydraulic fluid. In order to prevent the hydraulic pump from burning and to finish his job, Mr. Guillory testified that he shut down the backhoe and attempted to repair the hydraulic line by tightening the fitting with his pliers. The evidence further shows that while he was attempting to stem the flow of hydraulic fluid, Mr. Guillory slipped and fell causing injury to his back and person.

It further appears from the evidence that the hydraulic lines were attached by "flimsy" clamps which either separated or broke free thereby causing the hydraulic fluid to flow freely. Donald Ray Thomas, Mr. Guillory's supervisor, testified that the EPPJ originally received the backhoe in question with two clamps attached around the steel line. Mr. Thomas further testified that the two clamps in question were missing on the day of Mr. Guillory's accident for some unknown reason.

In further support of his motion for summary judgment, Mr. Guillory submitted the affidavit of Clarke J. Gernon, an expert engineer, who attested, in part, that:

1. There seems to be a consensus that the loss of hydraulic tube clamps resulted from contact with tree limbs. This explanation seems reasonable. Had the tube clamps been in place, leaks at the rod end fitting would have been reduced, if not eliminated. But once the steel tube was bent by snagging a tree limb, it too

would have had to be replaced in order to obtain the needed seal with the corresponding fitting.

According to the evidence established by the foregoing testimony and affidavit, Mr. Guillory's accident was proximately caused by a characteristic of the backhoe, that is, the missing hydraulic tube clamps and bent steel tube, that rendered it unreasonably dangerous.

Notably, CNH chose not to depose Mr. Gernon. It opposed Mr. Guillory's motion for summary judgment by adopting an affidavit of its expert, Richard Housman, which had been submitted in conjunction with CNH's previously filed motions for summary judgment. Importantly, CNH's expert failed to address, much less oppose, the issue of the proximate causation resulting from the missing tube clamps presented in Mr. Guillory's motion for summary judgment. In fact, Mr. Housman testified that, "if clamps were missing from a machine, or if a hydraulic line were leaking, those conditions would and should be repaired before the machine is put back into service." Mr. Housman's statement actually supports Mr. Guillory's claim that the absence of the tube clamps which enabled hydraulic fluid to leak proximately caused his accident and injuries.

### *Reasonably Anticipated Use*

CNH contends Mr. Guillory's accident did not arise from any reasonably anticipated use of the product; therefore, the LPLA is inapplicable. Contrary to CNH's assertion, Mr. Guillory's expert, Mr. Gernon, attested that:

> 2. Contact with the tree limbs by the Bucket Cylinder and its hydraulic components was, and remains, clearly foreseeable. To expect a backhoe to only be used on pristine sites where there are no trees, no brush, no roots, and no stumps is unrealistic. Any of these can cause damage to the hydraulic line routed down the Bucket Cylinder.

In further support of Mr. Gernon's opinion, Mr. Guillory's own testimony indicates the backhoe was used on rugged terrain on the date of his accident.

4

Mr. Guillory stated that a gravel road was completely submerged under water which was stopping traffic. He testified there were culverts that were blocked with debris from the field. According to Mr. Guillory, he was instructed by the EPPJ to clear the culverts in order to let the water escape and drain. About halfway through the job, the hydraulic line started spewing hydraulic fluid. In order to prevent the machine from burning, he had to shut it down. Mr. Guillory thereafter used his pliers to tighten the fitting in order to finish his job.

Additionally, a backhoe, by its very nature, is advertised to the public as a very versatile, rugged machine that can be used in a multitude of situations, including in areas where there would be ditches, draining problems, debris, trees, and other outdoor situations. Thus, the foregoing uncontradicted testimony and evidence indicates that possible contact with the tree limbs by the bucket cylinder and its hydraulic components were clearly foreseeable. Importantly, CNH's expert failed to address, much less oppose, the issue of reasonably anticipated use which was raised by Mr. Guillory in his motion for summary judgment.

### *Unreasonably Dangerous*

CNH contends the leaking hydraulic line of the backhoe that Mr. Guillory claims caused his accident neither existed when the backhoe left its manufacturer nor arose from a reasonably anticipated alteration or modification of the backhoe. As such, CNH alleges this characteristic therefore cannot constitute a design defect under the LPLA. CNH focuses on the fact that both clamps were on the backhoe when it left the manufacturer. Because the fluid allegedly leaked as a result of the missing clamps, CNH contends that the LPLA is inapplicable.

Although the fact that the clamps were missing may have allowed the hydraulic fluid to leak and cause the accident, the evidence shows that the entire

5

hydraulic tube, rather than just the clamps, was the characteristic that rendered it unreasonably dangerous. Specifically, Mr. Gernon attested to the following:

3.  Because of its size and corresponding strength, the damaging effect of unexpected contact of the Bucket Cylinder with trees and tree parts is minimal. But the steel hydraulic tube is slender and comparatively thin walled, so the steel tube and its supports will experience the majority of the damage from contact with trees and roots.

4.  In designing the backhoe, had Case reversed the Bucket Cylinder by rotating it 180 degrees so that the cylinder ports faced the dipper weldment, the rod end and hydraulic line would have been significantly more protected. In this configuration the hydraulic line is shielded by the Bucket Cylinder itself. This concept was included in Case's line of compact excavators. Apparently Case also eliminated the steel hydraulic tube replacing it with a hydraulic hose connected to the rod and port. Since the hose is more flexible, the tendency to leaking is diminished.

Importantly, CNH's expert failed to address, much less oppose, Mr. Gernon's attestation that the entire hydraulic tube was the defective characteristic. The fact that the tube clips were on the backhoe when it left the manufacturer is of no moment as the uncontradicted evidence shows that the entire steel hydraulic tube, rather than only the tube clips, was defective.

### _Alternative Design_

CNH contends the design of the backhoe is not unreasonably dangerous. The availability of an alternative design is relevant only if the user was engaged in a reasonably anticipated use of the product. Unless that threshold element is satisfied, a manufacturer does not have a legal duty to design its product to prevent such use. _Lynch_, 762 So.2d 1214. The LPLA defines the term "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." _Lynch_, 762 So.2d at 1218, _citing_ La.R.S. 9:2800.53(7). The term as defined in the LPLA requires a court to focus on the manner in which the

6

product was used. *Lynch*, 762 So.2d 1214. The standard for determining a reasonably anticipated use is an objective one. *Id.*

As discussed above, we find that Mr. Guillory's accident arose from a "reasonably anticipated use" of the product such that CNH was under a legal duty to design the backhoe to prevent the tube clips from falling off by protecting the backhoe's steel hydraulic tube from the rough terrain. Mr. Guillory's expert opined that the steel hydraulic tube was "slender and comparatively thin walled" such that "the steel tube and its supports" would "experience the majority of the damage from contact with trees and roots." Most importantly, Mr. Gernon opined that "the rod end and hydraulic line would have been significantly more protected" had CNH "reversed the Bucket Cylinder by rotating it 180 degrees so that the cylinder ports faced the dipper weldment." Mr. Gernon opined that such configuration would have "significantly" protected the rod end and hydraulic line. In fact, according to Mr. Gernon, such a concept was included in CNH's line of compact excavators. Mr. Gernon further attested that CNH also eliminated the steel hydraulic tube replacing it with a hydraulic hose connected to the rod and port on CNH's line of compact excavators. Since the hose is more flexible, the tendency to leak is diminished according to Mr. Gernon.

The foregoing affidavit is evidence that an alternative design existed such that the backhoe was unreasonably dangerous. Importantly, CNH's expert does not address the issue of an alternative design in his affidavit.

## CONCLUSION

After performing a de novo review, the foregoing evidence contained in the record establishes that these defects in design were a contributing cause to the accident which injured Mr. Guillory. Mr. Guillory has proven that CNH knew or should have known that the design of the hydraulic arm of the backhoe was

7

inherently dangerous, especially in view of the anticipated usage of its product. As Mr. Gernon points out, CNH had used an alternative design in other similar products that would have prevented this particular accident.

Accordingly, we conclude that Mr. Guillory has proven his case and that CNH marketed a product which was inherently dangerous in its normal use. We further find that Mr. Guillory has shown an alternative design that CNH itself used which would have prevented this accident. Mr. Guillory would not have been placed in such a precarious position had the machine not been defective requiring his attempted repair.

## DECREE

The judgment of the trial court is affirmed. All costs of this appeal are assessed against CNH America, L.L.C.

**AFFIRMED**.