663 So.2d 176 (1995)
David SYLVESTER, Plaintiff-Appellant,
v.
MENTOR CORPORATION, Defendant-Appellee.
No. 95-67.
Court of Appeal of Louisiana, Third Circuit.
September 20, 1995.
*177 Roy F. Amedee Jr., Laplace, for David Sylvester.
Benjamin Franklin Davis, Metairie, for Mentor Corporation.
Before DOUCET, C.J., and THIBODEAUX and PETERS, JJ.
PETERS, Judge.
The plaintiff, David Sylvester, brought this action against the defendant, Mentor Corporation, as the manufacturer of the Mentor Alpha I inflatable penile prosthesis. The plaintiff alleged that on April 29, 1991, he purchased the penile prosthesis and that approximately nine months after purchase, it broke or malfunctioned. Sylvester also alleged the defendant was guilty of "gross, wanton, willful and inexcusable negligence" (1) in producing and manufacturing a defective implant and holding it out for sale with constructive or actual knowledge of its condition, (2) in failing to warn of the possibility of breakage or malfunction, (3) in defectively designing the prosthesis, and (4) in defectively constructing the prosthesis. Additionally, the plaintiff alleged liability under theories of redhibition and strict liability.
Mentor filed a motion for summary judgment contending that Sylvester's claims were preempted by federal law. In support of its *178 motion, Mentor filed the affidavit of Lynn Breckenridge, its Regulatory Affairs Manager. In the affidavit, Ms. Breckenridge alleged that she has prepared submissions and overseen the preparation of "510(k) Pre-Market Notifications" to the Federal Food and Drug Administration (FDA) for medical devices manufactured by Mentor; that the Mentor Alpha I inflatable penile prosthesis is classified as a Class III device by the FDA; and that on April 12, 1983, the Mentor Alpha I device was cleared for marketing by the FDA as a result of a 510(k) submission. Ms. Breckenridge further alleged that the Mentor Alpha I is marketed as a prescription medical device and contains the appropriate labeling required by the FDA.
After hearing, the trial court granted Mentor's motion. Sylvester then filed a motion for new trial, which the trial court denied. Sylvester has appealed contending that the trial court erred in dismissing his claims on the basis of federal preemption and in finding that the penile prosthesis was certified as a Class III medical device.[1]

OPINION
The Food, Drug, and Cosmetic Act of 1938, 21 U.S.C. § 301 et seq., "empowered the FDA to require pre-market testing of drugs, as well as post-marketing controls over manufacturers." Ministry of Health, Province of Ont., Can. v. Shiley Inc., 858 F.Supp. 1426, 1433 (C.D.Cal.1994). The Act was amended by the Medical Device Amendments of 1976 (MDA), 21 U.S.C. § 360c et seq., to include regulatory authority by the FDA over certain devices intended for human use.
The MDA classifies certain devices intended for human use as Class I, Class II, or Class III devices. 21 U.S.C. § 360c(a)(1)(A)(C). Class I devices are those which are subject only to general controls and therefore are loosely regulated. 21 U.S.C. § 360c(a)(1)(A). Class II devices are those for which general controls are inadequate to provide the consumer with a reasonable assurance of their safety and effectiveness and therefore are subject to special controls. 21 U.S.C. § 360c(a)(1)(B). Class III devices are those which cannot be classified as Class I or Class II devices because insufficient information exists to determine that the controls provided for Class I or Class II devices would provide reasonable assurance of the safety and effectiveness of the devices and which are represented to be for use in supporting or sustaining human life or use which is of substantial importance in preventing impairment of human health or present a potential unreasonable risk of illness or injury. 21 U.S.C. § 360c(a)(1)(C). Penile inflatable implants are Class III devices. 21 C.F.R. § 876.3350.
Class III devices are generally subject to a stringent premarket approval process. 21 U.S.C. § 360c(a)(1)(C). This process involves close scrutiny of the device, the ultimate goal of which is to obtain approval of the device. See Fender v. Medtronic, Inc., 887 F.Supp. 1326 (E.D.Cal.1995).
FDA approval of a premarket application shows the FDA has reviewed a device's testing, design specifications, intended use, manufacturing method, performance standard, and labelling, see 21 U.S.C. § 360e(c)(1), and decided the device is safe and effective, see id. § 360c(a)(2).
Martello v. Ciba Vision Corp., 42 F.3d 1167, 1169 (8th Cir.1994).
However, certain Class III devices currently marketed are not required to have premarket approval unless specifically subject to a regulation requiring such approval. 21 U.S.C. § 360e(b)(1). Such devices include those which were introduced or delivered for introduction into interstate commerce for commercial distribution before May 28, 1976, or are of a type so introduced or delivered and are substantially equivalent to another device within that type. 21 U.S.C. *179 § 360e(b)(1)(A), (B). In such a case, an applicant is only required to present a premarket notification submission to the FDA at least ninety days before the device is to be introduced or delivered for introduction into interstate commerce for commercial distribution. 21 C.F.R. § 807.81(a). This is also known as a premarket notification or 510k process and is the type of process the device in this case underwent. The ultimate goal of the premarket notification process is to obtain a finding of substantial equivalence so that the applicant may proceed to market the device. See 21 C.F.R. § 807.100; Fender, 887 F.Supp. 1326 (E.D.Cal.1995). In fact, 21 C.F.R. § 807.97 provides in part that a
determination ... that the device ... is substantially equivalent ... does not in any way denote official approval of the device. Any representation that creates an impression of official approval of a device because of complying with the premarket notification regulations is misleading and constitutes misbranding.
(Emphasis added).
We are not aware that the FDA has promulgated a regulation requiring the device in question to obtain premarket approval. Since Mentor only alleged clearance through submission of a 510k application and a determination of substantial equivalence, it cannot claim official approval of its device.
Mentor relies on 21 U.S.C. § 360k(a) of the MDA to claim federal preemption.[2] That statute provides:
Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement
(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.
Thus, it is clear that Congress has preempted certain state actions by passage of the MDA. The full extent of the preemptive language is in dispute.
We first note that Article VI of the United States Constitution provides that the "Laws of the United States ... shall be the supreme Law of the Land." Therefore, any state law that conflicts with federal law has no effect. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). However, "[c]onsideration of issues arising under the Supremacy Clause `start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'" Id. at 516, 112 S.Ct. at 2617 [quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)].
Congressional intent concerning preemption may be expressed explicitly or implicitly in the law. Id. However, when Congress includes a provision explicitly preempting any aspect of state law, such inclusion forecloses any judicial inquiry into implied preemption in that "Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not pre-empted." Id. at 517, 112 S.Ct. at 2618. Thus, the explicit language of 21 U.S.C. § 360k(a) prohibits our inquiry into implied preemption. King v. Collagen Corp., 983 F.2d 1130 (1st Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). Not considering implied preemption, our task primarily becomes one of statutory construction. Michael v. Shiley, Inc., 46 F.3d 1316 (3d Cir.1995). In performing that task,
[w]e must give the language of § 360k "a fair but narrow reading" which will give effect to Congress' purpose without undermining "the strong presumption against pre-emption."
Id. at 1322 [quoting Cipollone, 505 U.S. at 523, 112 S.Ct. at 2621].
*180 It is Mentor's position that Sylvester's suit regarding the penile prosthesis is preempted in that liability under any of plaintiff's theories of recovery would be a "requirement" in addition to or different from the existing federal regulations applicable to the device. In 21 C.F.R. § 808.1(b), the FDA included court decisions within the meaning of "requirement." Additionally, the Supreme Court has recognized that a state tort claim can constitute a "requirement":
As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." San Diego Building Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959).
Cipollone, 505 U.S. at 521, 112 S.Ct. at 2620.
Thus, it is clear that a state court decision on tort and redhibition claims is preempted to the extent that it imposes requirements different from or in addition to the requirements applicable under the MDA.
The premarket approval process is a "requirement" within the meaning of 21 U.S.C. § 360k(a) and 21 C.F.R. § 808.1(d). Martello, 42 F.3d 1167. We note that for devices which have undergone the premarket approval process, courts have found preemption of various theories of recovery pursuant to state law. See King, 983 F.2d 1130 [holding that strict liability; breach of express and implied warranties; negligent design, manufacturing, marketing, and sale; product misbranding, misrepresentation, and failure-to-warn; and fraud claims, in connection with a Class III device, were preempted by the MDA]; Stamps v. Collagen Corp., 984 F.2d 1416 (5th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993) [holding that inadequate labeling, failure to warn, and defective design and manufacturing claims relating to a Class III device were preempted]; Michael, 46 F.3d 1316 [holding that negligence, strict product liability, breach of implied warranty, and fraud (on the FDA) claims were preempted, but breach of express warranty and fraud (through efforts to promote the product) claims were not preempted].
Additionally, in Fender, 887 F.Supp. at 1332, the court held that "if there is a specific FDA requirement applicable to a particular device, preemption cannot be avoided by applying federal standards within the state tort action." However, some courts have been unwilling to apply a rule of blanket preemption. See Reiter v. Zimmer, Inc., 830 F.Supp. 199 (S.D.N.Y.1993) [holding that the plaintiff's claim of negligent manufacturing was not preempted where the plaintiff alleged that the defendant did not comply with its own FDA-approved manufacturing process]; Ministry of Health, Province of Ont., Can., 858 F.Supp. at 1439 [citing Reiter and holding that "the MDA would not preempt claims that the manufacturer negligently failed to comply with the FDA's regulations, since a finding of wrongdoing would merely impose those regulations already imposed by the statute, and would not be `different from or in addition to' those imposed by the MDA"]; Estate of LeMay v. Eli Lilly & Co., 881 F.Supp. 428 (E.D.Wis.1995) [finding that the plaintiffs were entitled to conduct discovery where they had alleged that the medical device was not manufactured in compliance with the FDA specifications].
We agree with the line of jurisprudence that declines to find blanket preemption for all state claims. Applying the strong presumption against preemption and giving 21 U.S.C. § 360k(a) "a fair but narrow reading," we do not find that Congress intended to prohibit the states from imposing all state remedies in all situations. If that had been Congress' intent, it could have easily said so by providing that a state or political subdivision could not impose or enforce any requirement concerning a device. Although 21 U.S.C. § 360k(a) clearly has preempted state law to the extent state law would purport to place requirements on a device different from or in addition to those required by the federal law, it is equally clear that there is a distinction between a "requirement" and a "remedy." The obligation or duty is that which imposes the requirement. The remedy is merely a redress for violation or breach of that duty. Thus, we find no preemption of *181 a state law award of damages for violations of the FDA's own requirements for a particular device. We reject the argument, as set forth in Fender, 887 F.Supp. 1326, that this approach usurps the FDA's discretionary role in the application and interpretation of its regulations.
Moreover, it is not as if the MDA expressly precludes remedies. Indeed, the MDA itself refers to other remedies. Specifically, 21 U.S.C. § 360h establishes a remedy of repair, replacement, refund, or reimbursement under certain circumstances and further provides:
Compliance with an order issued under this section shall not relieve any person from liability under Federal or State law. In awarding damages for economic loss in an action brought for the enforcement of any such liability, the value to the plaintiff in such action of any remedy provided him under such order shall be taken into account.
21 U.S.C. § 360h(d) (emphasis added).
Additionally, references to civil litigation in 21 U.S.C. § 360i(b)(3) seem to indicate an intent to preserve some state vehicles of recovery for an injured user of the regulated device. Moreover, 21 C.F.R. § 808.1(d)(1), (2) provides:
(1) Section 521(a) [21 U.S.C. § 360k] does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness)), or to unfair trade practices in which the requirements are not limited to devices.
(2) Section 521(a) does not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act.

(Emphasis added).
An agency's interpretation of a statute is controlling as long as it does not contravene Congress' intent. Ministry of Health, Province of Ont., Can., 858 F.Supp. 1426.
Having concluded that a device which has received premarket approval is not protected by a blanket preemption, it follows that a device subject to only a 510k process is also not entitled to such protection. Our inquiry next requires a further determination of the extent of protection afforded a device subject only to a 510k process.
The plaintiff has alleged failure-to-warn, defective design and construction, strict liability, and redhibition theories of recovery. Concerning the failure-to-warn claim, such "claims challenge the adequacy of the labeling and packaging." Ministry of Health, Province of Ont., Can., 858 F.Supp. at 1439. Even though the device in question did not go through the premarket approval process, the "FDA regulates the content and appearance of prescription medical device labels.... 21 C.F.R. §§ 801.1, 801.15, 801.109." Mendes v. Medtronic, Inc., 18 F.3d 13, 18 (1st Cir.1994). In Fender, 887 F.Supp. at 1330, the court stated that "claims based upon inadequate labeling will be preempted as to all Class III devices[premarket approval] and premarket notification devices alikebecause the regulations governing premarket notification subject the proposed label to extensive FDA inspection." Applying Louisiana law, a court could find the device's labeling deficient even though it complies with the FDA requirements. Since the FDA imposes labeling requirements even on those Class III devices that have not undergone premarket approval but only premarket notification, we hold that the plaintiff's failure-to-warn claim would be preempted if the defendant has complied with all FDA requirements with respect to this particular device. We note that Ms. Breckenridge's affidavit states only the following in relation to this issue:
The Mentor Alpha I is marketed as a prescription medical device. Its label bears the statement required by FDA regulations: "Caution: Federal law restricts this device to sale by or on the order of a physician." The product is also accompanied by labeling materials whose content is specified by FDA's prescription device labeling regulations at 21 C.F.R. Sections 801.109(c) and (d).
This statement addresses all Mentor Alpha I devices in general and does not purport to *182 assert that the particular device involved in this litigation contained the appropriate warnings. This is a question of fact yet unanswered.
Concerning the claims of defective design and construction, strict liability, and redhibitory defects, we must address whether the 510k process and the good manufacturing practice regulations are "requirements" within the meaning of 21 U.S.C. § 360k(a). We note that
[s]tate or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements.
21 C.F.R. § 808.1(d) (emphasis added).
In Fender, 887 F.Supp. 1326, the court concluded that the premarket notification process is not a specific requirement applicable to a particular device while the premarket approval process is. We agree with the reasoning in Fender:
In light of the different procedure followed by the FDA for the [premarket approval] process and the premarket notification process, the premarket notification regulations are not fairly characterized as "specific counterpart regulations" or "other specific requirements applicable to a particular device" even as applied to Class III devices. 21 C.F.R. § 808.1(d).
Additionally, the court concluded:
[T]he good manufacturing practices regulations are not focussed on particular devices and do not in themselves require FDA scrutiny and approval of a particular manufacturer or its practices.
Fender, 887 F.Supp. at 1331.
Indeed, the good manufacturing practice regulations are applicable to all finished devices intended for human use. 21 C.F.R. § 820.1. Thus, a finding that the good manufacturing practice regulations preempt state law claims based on defective manufacturing would result in preemption of all such claims as to any medical devices, even Class I devices. Fender, 887 F.Supp. 1326.
We agree with the conclusion in Fender that as a general proposition neither the premarket notification regulations nor the good manufacturing practice regulations are sufficiently specific to a particular device to preempt state law. The court in that case, however, did leave open the possibility of preemption of claims concerning 510k process devices in the limited circumstance of detailed FDA scrutiny of manufacturing practices, which the court found had not been demonstrated in the case before it. As in Fender, we do not find that Mentor has demonstrated detailed FDA scrutiny of its manufacturing practices concerning the Alpha I prosthesis. Thus, we find no preemption regarding the claims of negligent manufacturing and construction, strict liability, and redhibitory defects. We distinguish the failure-to-warn claim from the plaintiff's other claims because it is our understanding that the applicable labeling requirements are device-specific requirements whereas the premarket notification process and good manufacturing practice regulations are not.
This court recently held:
In reviewing a summary judgment, this court is required to follow the same criteria as that of the district court. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318 (La. 1993). A motion for summary judgment is properly granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits establish there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law. Id. The burden of proving there is no genuine issue of material fact rests with the mover. Consequently, those pleadings, documents, and affidavits submitted by the mover will be scrutinized closely and any inferences to be drawn therefrom will be construed in a light most favorable to the party opposing the motion. Id. See also Hopkins v. Sovereign Fire & Casualty Insurance Company, 626 So.2d 880 (La.App. 3d Cir.1993), writs denied, 634 So.2d 390, 402 (La.1994). Any doubt is resolved in *183 favor of a trial on the merits. Durrett v. Scott Truck and Tractor, 614 So.2d 1379 (La.App. 3d Cir.), writ denied, 617 So.2d 915 (La.1993).
Quick v. Myers Welding & Fabricating, Inc., 94-282 (La.App. 3 Cir. 12/7/94), 649 So.2d 999, 1001, writ denied, 95-0729 (La. 4/28/95), 653 So.2d 598.
Whether the specific Mentor Alpha I inflatable penile prosthesis involved in this litigation meets the FDA requirements is a question of fact yet to be resolved. As the record now stands, we are provided with nothing suggesting that proof of the plaintiff's claims will require proof of "any requirement... different from, or in addition to, any requirement applicable under" the MDA. 21 U.S.C. § 360k(a). This court concludes that the trial court was in error in granting the summary judgment dismissing the plaintiff's case.

DISPOSITION
The judgment of the trial court is reversed, and this matter is remanded for further proceedings. All costs of the appeal are taxed against the defendant, Mentor Corporation.
REVERSED AND REMANDED.
NOTES
[1] We note that Sylvester appealed the judgment denying his motion for new trial rather than the summary judgment dismissing his claims. Generally, the denial of a motion for new trial is not appealable and is reviewable only under supervisory jurisdiction for abuse of discretion. Chandler v. Grass, 600 So.2d 852 (La.App. 3 Cir.1992). Where the motion for appeal refers to a judgment denying a motion for new trial but the appellant exhibits the clear intention to appeal from the judgment on the merits, the appeal should be considered. Hayes v. Hayes, 607 So.2d 3 (La.App. 2 Cir.1992). Thus, we will consider Sylvester's appeal as properly before us.
[2] Subsection (b) of this statutory provision merely defines the method by and circumstances under which a state or political subdivision may obtain an exemption from subsection (a) and is not applicable to the issue at hand.