803 So.2d 68 (2001)
Anthony Marvin GREEN, et al, Plaintiff-Appellant,
v.
BDI PHARMACEUTICALS, Division of Body Dynamics, Inc., Defendant-Appellee.
No. 35,291-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
*69 Lavalle B. Salomon, Monroe, Counsel for Plaintiff-Appellant.
Sutterfield & Webb by James R. Sutterfield, Gordon P. Serou, Jr., New Orleans, Counsel for Defendant-Appellee.
Before NORRIS, STEWART and GASKINS, JJ.
NORRIS, Chief Judge.
The plaintiffs, Anthony and Shannon Green, appeal a summary judgment dismissing their products liability claim against BDI Pharmaceuticals, Division of Body Dynamics Inc. BDI manufactures and sells "Mini Thins," an over-the-counter drug containing Ephedrine HCl, an amphetamine-like compound. Although Mini Thins are labeled as a bronchodilator and expectorant, Anthony Green (hereinafter, "Green") alleged that he became addicted to them while using them for increased energy. For the reasons expressed, we affirm.

Factual and procedural background
Most of the factual background is summarized from the deposition given by Green in June 1998, a few days before his 32nd birthday. Green had used "White Cross," an Ephedrine product, a few times as a teenager in the mid-1980s, but began taking Mini Thins in earnest in May 1990 while working for a stereo store. While they were preparing for a car stereo competition, his boss offered him about five tablets. Green took a few more the next morning and found that he could work longer hours, stay very alert, and not need *70 to stop to eat. Green admitted that by the end of that first weekend, he was "hooked."
For about a year or so, he was taking 12 tablets a day. However, he felt that the tablets were gradually containing less and less Ephedrine; as this happened, he took more and more tablets. Eventually he was buying them in 250-tablet bottles which would last him two days. He described this as his "standard regime" for about three years. He would take them six at a time, every hour or so. He felt this was a "normal dosage" because Mini Thins also came in boxes of six. Occasionally, he took nearly 150 per day. He also admitted he did not read the product label until sometime in 1997, long after he was addicted.
At his deposition, Green produced 18 empty Mini Thin product bottles. The labels listed the recommended dosage as "½ to 1 tablet every 4 hours, not to exceed 6 tablets in 24 hours, or as directed by a doctor. Do not exceed recommended dose unless directed by a doctor." He also admitted that although the label said the product "helps breathing without drowsiness," he never took it for breathing problems, only for energy.
Green was hospitalized for treatment in early 1997, after which he spent about three months drug-free. Since that time, however, he resumed taking about 60 Mini Thins a day. He described his health problems as paranoia, depression, high blood pressure and chronic neck pain.
Green filed the instant suit against BDI in October 1997.[1] This stated a claim for products liability, alleging that Mini Thins are unreasonably dangerous because (1) BDI did not use reasonable care to warn customers that Ephedrine is addictive and (2) an alternative design was capable of preventing his injuries. He alleged general and special damages; Shannon Green, his wife, alleged loss of consortium.
BDI filed a motion for summary judgment, urging that Green could not meet his burden of proof as to certain elements of a product liability claim under the Louisiana Products Liability Act ("LPLA"), R.S. 9:2800.54. In support it filed Green's deposition, outlining his history of using Mini Thins. It also introduced an affidavit from Karen Windle-Burcham, BDI's president since March 1997. She examined the Mini Thin product bottles which Green had brought to the deposition; she identified the lot numbers and expiration dates, and reproduced the warnings printed on the labels. She stated that the labels comply with all applicable Federal regulations. By supplemental affidavit, Ms. Windle-Burcham stated she had been employed by BDI since 1991, was personally aware of BDI's labeling from the late 1980s to the present, and that all BDI labels conformed to Federal regulations.
BDI argued that because the recommended dosage is ½ to 1 tablet every six hours, not to exceed six per day, Green's initial dosage of 12 per day, rising to over 100 per day, could not possibly be construed as reasonably anticipated use. BDI further argued that because its labels comply with Food and Drug Administration regulations, 21 C.F.R. §§ 341.76, 341.78, the sufficiency of the warning is preempted by Federal law, 21 U.S.C. § 379r (a). Finally, BDI argued that not only was Green's defective design argument *71 preempted by Federal law, but Green had offered no evidence that any alternative (safer) design existed.
Green opposed the motion, arguing that causation and reasonably anticipated use are factual issues that cannot be decided on motion for summary judgment. He attached a 1997 letter, not in affidavit form, from the FDA advising BDI that the Mini Thins label violates federal law because it "suggests that the product is intended to aid in weight loss," a purpose for which it is not approved. This failure to comply, Green argued, defeats any claim of federal preemption. Finally, he urged that Ms. Windle-Burcham's affidavit was not competent because it was not based on personal knowledge.
The District Court granted summary judgment. In written reasons it found that Green "never used Mini Thins in a normal manner nor was the failure to [warn] a cause in fact of the plaintiffs damages." In support it cited Butz v. Lynch, 99 1070 (La.App. 1 Cir. 6/23/00), 762 So.2d 1214, which held "as a matter of law that the intentional inhalation of the contents of a can of airbrush propellant to produce an intoxicating effect is not a reasonably anticipated use of the product." The court also cited Glassner v. R.J. Reynolds Tobacco Co., 223 F.3d 343 (6 Cir.2000), for the rule that "federal law mandating cigarette warnings preempted state law failure-to-warn claims." Finding that Green "certainly abused" the product, the court granted summary judgment. Green has appealed.

Applicable law
A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966 B. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of all except certain disallowed actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. The burden of proof remains with the movant; however, if the movant will not bear the burden of proof at trial on the matter before the court on motion for summary judgment, then the movant may merely point out to the court that there is an absence of factual support for one or more elements essential to the plaintiffs claim. The burden then shifts to the non-moving party to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art. 966 C(2); Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41. Appellate review of a grant or denial of summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226.
The LPLA, La. R.S. 9:2800.51-2800.60, establishes the exclusive bases of liability for manufacturers for damage caused by their products. The plaintiffs burden of proof is contained in R.S. 9:2800.54:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if:
(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

*72 (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.
* * *
D. The claimant has the burden of proving the elements of Subsections A, B and C of this Section.
The labeling of bronchodilator and expectorant drug products is subject to federal regulation. See, 21 C.F.R. §§ 341.1, 341.76, 341.78. No State or political subdivision of a State may establish or continue in effect any requirement that relates to the regulation of a drug that is "different from or in addition to, or that is otherwise not identical with, a requirement under" the Food, Drug and Cosmetic Act. 21 U.S.C. § 379r(a)(2). When Federal law provides that "no requirement or prohibition * * * shall be imposed under State law with respect to the advertising or promotion [of a product] labeled in conformity with the provisions of" the Federal statute, courts have held that the Federal law preempts State statutes and tort claims which would extend or enlarge labeling requirements. Cipollone v. Liggett Group Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); Glassner v. R.J. Reynolds Tobacco Co., supra.

DiscussionAlternative design
A product is unreasonably dangerous only if it meets one of the four criteria listed in R.S. 9:2800.54 B. Green's petition alleged only two of these theories, viz. failure to warn and unreasonably dangerous design. The design argument may be disposed of summarily. BDI's brief in support of its motion for summary judgment asserted, "Contrary to plaintiffs allegations, there existed no alternative design for the Mini Thins product." This effectively pointed out to the court the absence of factual support for an essential element of the plaintiff's claim under R.S. 9:2800.57. Thus the burden shifted to Green to present some evidence demonstrating, as a genuine issue of material fact, that an alternative design might exist that would have prevented the plaintiffs damage. 12 William E. Crawford, Louisiana Law Treatise: Torts, § 16.23 (2000). Green's opposition to the motion for summary judgment, and the attached documents, contained nothing related to any alternative design. On this showing, summary judgment is proper to dismiss the alternative design claim. Smith v. General Motors Corp., 31,258 (La.App. 2 Cir. 12/9/98), 722 So.2d 348; Williams v. State, 93 0278 (La.App. 1 Cir. 3/11/94), 640 So.2d 365.

Failure to warn
By his second assignment of error Green contends the District Court committed legal error in finding that his "failure to warn" claim was preempted by Federal law under Glassner v. R.J. Reynolds Tobacco Co., supra. This argument is somewhat more complicated but ultimately cannot withstand the motion for summary judgment.
BDI urges that Congress has expressed a clear intent, by enacting 21 U.S.C. § 379r, to preempt State laws, such as R.S. 9:2800.54, which would impose on manufacturers of nonprescription drugs additional and more burdensome labeling requirements. We are unable to find any case explicitly holding that § 379r preempts R.S. 9:2800.54, but we find that *73 it does, based on jurisprudence applying identical language in similar statutes.
When Congress expresses an intent to enact a comprehensive regulatory scheme, the Federal law preempts any State law which would impose additional requirements. Hopkins v. American Cyanamid Co., 95-1088 (La.1/16/96), 666 So.2d 615, Prod. Liab. Rep. (CCH) ¶ 14, 517. Preemption is narrowly construed, and applied only to those claims which Congress has clearly intended to preempt. Sylvester v. Mentor Corp., 95-67 (La.App. 3 Cir. 9/20/95), 663 So.2d 176, writ denied 95-2936 (La.2/16/96), 667 So.2d 1052, and authorities therein.
In the seminal case of Cipollone v. Liggett Group Inc., supra, the plaintiff filed a suit against a cigarette manufacturer, raising numerous common-law claims including one based on the defendant's failure to warn consumers about the dangers of smoking. The defendant, however, urged that it had complied with all federal regulations regarding product warnings and that the claim was preempted by the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. § 1334(b) (1969), which stated:
No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.
The Supreme Court concluded that insofar as claims under a failure-to-warn theory "require a showing that respondents' post-1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted." Id., 505 U.S. at 524, 112 S.Ct. at 2621. See also, Glassner v. R.J. Reynolds Tobacco Co., supra.
In Hopkins v. American Cyanamid Corp., supra, the plaintiffs filed a products liability suit against the manufacturer of two chemical fungicides for damages to their cotton crop. One of the claims was that the manufacturer failed to warn users of the adverse effects of combining the two products. The manufacturer, however, asserted that it complied with all federal regulations regarding product warnings and that the claim was preempted by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136v, which provided in pertinent part:
(b) Uniformity
Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
The court discussed Cipollone, supra, and other Federal cases, concluding that "just as the 1969 Act preempts state law claims based on advertising and promotion of cigarettes, so too FIFRA preempts state law claims based on labeling and packaging of pesticides." 666 So.2d at 621.
In Sylvester v. Mentor Corp., supra, the plaintiff filed a products liability suit against the manufacturer of a prosthetic device, alleging that it broke or malfunctioned within nine months after purchase. The plaintiff asserted, inter alia, that the manufacturer failed to "warn of the possibility of breakage or malfunction." The manufacturer, however, asserted that it had complied with all applicable federal labeling guidelines and thus the claim was preempted by the Medical Device Amendment to the Food, Drug and Cosmetics Act, 21 U.S.C. § 360k(a), which provides:
Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device *74 intended for human use any requirement
(1) which is different from, or in addition to, any requirement under this chapter to the device, and
(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.
The court concluded that the plaintiff's failure-to-warn claim "would be preempted if the defendant has complied with all FDA requirements with respect to this particular device." Since the summary judgment evidence on file did not establish compliance, the court reversed the summary judgment and remanded the case.
In the instant case, BDI shows that Congress has passed the "National Uniformity for Nonprescription Drugs," 21 U.S.C. § 379r. This provides, in pertinent part:
(a) In general
Except as provided in subsection (b), (c)(1), (d), (e), or (f) of this section, no State or political subdivision of a State may establish or continue in effect any requirement
(1) that relates to the regulation of a drug that is not subject to the requirements of section 353(b)(1) or 353(f)(1)(A) of this title; and
(2) that is different from or in addition to, or that is otherwise not identical with, a requirement under this Act, the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 et seq.), or the Fair Packaging and Labeling Act (15 U.S.C. 1451 et seq.)
The substantive requirements are set forth in 21 C.F.R. §§ 341.76 and 341.78, which regulate the labeling of bronchodilator and expectorant drug products, mandating the use of particular warnings.[2] Further, § 341.1 states:
(a) An over-the-counter cold, cough, allergy, bronchodilator, or antiasthmatic drug product in a form suitable for oral, inhalant, or topical administration is generally recognized as safe and effective and it is not misbranded if it meets each of the conditions in this part and each of the general conditions established in § 330.1. (Emphasis added)
A plain reading of 21 U.S.C. § 379r shows a clear intent to override any State labeling requirements. Notably, § 379r precisely tracks the language of the Medical Device Amendment, which was held in Sylvester v. Mentor Corp., supra, to preempt the plaintiff's claim based on failure to warn (subject to a showing that the manufacturer had complied with all regulations). Moreover, § 379r is virtually identical to the provision of FIFRA which, in Hopkins v. American Cyanamid Co., supra, was found to preempt the plaintiff's products liability claim based on failure to warn. Section 379r also substantially reproduces the portion of the Public Health Cigarette Smoking Act of 1969, which in *75 Cipollone v. Liggett Group, supra, was found to preempt the plaintiff's common-law claim based on failure to warn. We therefore find that Federal law preempts Green's failure-to-warn claim.
In her affidavits, Ms. Windle-Burcham stated that all Mini Thin products, "at all times from the late 1980s to date, have borne labels conforming with applicable Federal Regulations" and "have complied with product content requirements of federal law." We have read the warnings on the 18 product containers, as reproduced in the affidavit, and find that they comply with the federal regulations. Green has offered nothing to counter this showing.
Ms. Windle-Burcham further explained that in 1994, BDI added Guaifenesin to the product and changed its name to "Mini Thin Two Way Action"; in 1997, the Mini Thin product (consisting only of Ephedrine) was discontinued. Perhaps anticipating the contention in Green's opposition to summary judgment, Ms. Windle-Burcham added that the name "Mini Thin" was dropped to avoid the impression that the product was for weight loss, but this occurred before the FDA requested the name change.
This summary judgment evidence does not create any genuine issue of material fact as to whether Mini Thin and Mini Thin Two Ways were labeled in a manner inconsistent with applicable law. Green's failure to warn claim is preempted by Federal law.

Reasonably anticipated use
By his first assignment of error Green urges the District Court erred in finding that his use or misuse of Mini Thins was not a "reasonably anticipated use," as defined by R.S. 9:2800.53(7). In support, he attempts to distinguish Butz v. Lynch, supra, on grounds that it involved a qualitative misuse of the product, sniffing an aerosol paint propellant in order to obtain a "high." On similar grounds he attempts to distinguish Peterson v. G.H. Bass & Co., 97-2843 (La.App. 4 Cir. 5/20/98), 713 So.2d 806, writ denied 98-1645 (La.10/16/98), 727 So.2d 441, and Frith v. John Deere Co., 955 F.Supp. 663 (W.D.La.1996), aff'd 108 F.3d 332 (5 Cir.1997).
Since we have found that neither of his claims related to the unreasonable danger of the productunreasonably dangerous design and failure to warncan stand, it is not necessary to analyze extensively the question of the plaintiff's reasonably anticipated use. This is defined by the LPLA as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." R.S. 9:2800.53(7). The statutory concept of "reasonably anticipated use" is much narrower than jurisprudential concept of "normal use" which was applied prior to the enactment of the LPLA. See, e.g., Delphen v. Department of Transp. & Dev., 94-1261 (La.App. 4 Cir. 5/24/95), 657 So.2d 328, writ denied 95-2116 (La.11/17/95), 663 So.2d 716; Kampen v. American Isuzu Motors Inc., 157 F.3d 306 (5 Cir.1998). "Normal use" included misuse that was contrary to the manufacturer's instructions. Bloxom v. Bloxom, 512 So.2d 839 (La.1987). By contrast, "reasonably anticipated use" is an objective standard which does not include uses clearly contrary to warnings. Butz v. Lynch, supra.
Green stated in deposition that he never used Mini Thins for bronchial congestion, but he had used Ephedrine occasionally in high school "on social occasions." He became addicted to Mini Thins by using them in large quantities for extra energy. One weekend in 1990 he took four or five of them at a time, followed by another similar dose; by the end of the weekend *76 he was taking two doses of six pills a day. Eventually he increased his dosage to over 100 a day. Because he never took this product for its intended purpose, vastly exceeding the recommended dosage from the outset, there is no genuine issue of material fact, and as a matter of law his conduct was not "reasonably anticipated use." Butz v. Lynch, supra.

Conclusion
For the reasons expressed, the summary judgment is affirmed, dismissing BDI Pharmaceuticals, Division of Body Dynamics Inc., from the suit. Costs are assessed to the plaintiffs, Anthony and Shannon Green.
AFFIRMED.
NOTES
[1] Also named as defendant was Rack Service Company, but the petition does not include any factual allegations against this entity and the record does not show that it has been served. The instant judgment is a valid partial final judgment under La.C.C.P. art. 1915 A(1).
[2] "For products containing epinephrine, * * *: (i) Do not use this product more frequently or at higher doses than recommended unless directed by a doctor. [first sentence in boldface type] Excessive use may cause nervousness and rapid heart beat, and, possibly, adverse effects on the heart." (ii) "Do not continue to use this product, but seek medical assistance immediately if symptoms are not relieved within 20 minutes or become worse." [sentence in boldface type]. 21 C.F.R. 341.76(c)(6). "The labeling of the product contains the following information under the hearing `Directions': (1) For products containing ephedrine, * * * Adults and children 12 years of age and over: Oral dosage is 12.5 to 25 milligrams every 4 hours, not to exceed 150 milligrams in 24 hours, or as directed by a doctor. Do not exceed recommended dose unless directed by a doctor. Children under 12 years of age: Consult a doctor." 21 C.F.R. 341.76(d).