Elmer SEELEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 77A01–0207–PC–252.

Court of Appeals of Indiana.

Feb. 10, 2003.

Susan K. Carpenter, Public Defender of Indiana, Richard Denning, Deputy Public

Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Elmer Seeley appeals from the denial of his petition for post-conviction relief. He presents several issues for our review, which we renumber and restate as:

I. Whether the post-conviction court should have accepted evidence which Seeley presented following remand; and

II. Whether he received ineffective assistance of counsel.

We affirm.

This is the third time that this case has come before this court on appeal. The facts of this case, as stated by this court in the unpublished memorandum decision on direct appeal are:

" During the week of January 1, 1995, Seeley and two juveniles, Jack Carpenter and Shaun Seeley, stayed with Seeley at his home. On his property, Seeley had converted a semi-trailer into a tool shed and it was stocked with various tools and a workbench. On the night of January 1, Jack slept in the semi-trailer while Shaun and Seeley slept at other locations. The next day, Jack and Shaun worked for Seeley and moved 'piles of junk' around his property. Seeley gave Jack and Shaun 'lines' of 'crank' in exchange for their work. This pattern of work and inhaling crank continued almost without interruption through January 7, 1995.

On January 7, Seeley had driven Shaun and Jack to Coalmount to repair Jack's truck. Jack decided he should go home, but Seeley persuaded Jack to stay with him and Shaun. The three drove to a barn owned by Al Snyder. Jack then began to hallucinate and spent the night sleeping on the ground. When he awoke, Seeley and Shaun were nowhere to be seen. As he began walking home, Seeley and Shaun pulled up in the truck, but Jack refused to ride with them. Jack arrived home and his mother noticed that he was hallucinating and behaving abnormally. She then brought him to Dr. Gene Bourgasser's office. Dr. Bourgasser tested Jack for drugs which revealed that he had taken methamphetamine." *Seeley v. State*, No. 77A01–9601–CR–13, slip op. at 2–3, 676 N.E.2d 37 (Ind.Ct.App. Jan. 29, 1997), *trans. denied.*

Following his trial, Seeley obtained new counsel for purposes of appeal. Upon his direct appeal, this court reversed Seeley's conviction for Possession of a Controlled Substance, as a Class D felony, because of a double jeopardy violation. This court also affirmed his convictions for Dealing in a Controlled Substance, as a Class A felony, Dealing in a Controlled Substance, as a Class B felony, and Maintaining a Common Nuisance, as a Class D felony. In so doing, this court determined that Seeley did not receive ineffective assistance of trial counsel, that the evidence was sufficient to support the conviction, and that he was properly sentenced. After obtaining further appellate counsel, Seeley sought transfer of his case to the Indiana Supreme Court. Transfer was denied.

On January 8, 1999, after acquiring new counsel, Seeley filed a Petition for Post–Conviction Relief, claiming among other things, that he received ineffective assistance of trial and appellate counsel and that the evidence was insufficient to support the conviction. The post-conviction court denied his petition on August 31,

2000. On March 9, 2001, Seeley, by new counsel who was appointed to perfect his appeal, filed a motion asking this court to remand his case to the post-conviction court so that he could present additional evidence which tended to support his innocence. This court granted said motion and terminated his appeal without prejudice on March 14, 2001.

Following remand, the post-conviction court conducted a second hearing in which Dr. Daniel McCoy, a toxicologist, testified that the test which was performed on Jack by Dr. Bourgasser could not indicate conclusively that Jack had inhaled methamphetamine. Rather, the drug screen which was used would give a positive reading if there was the presence of a variety of compounds such as amphetamine and methamphetamine, and possibly phenyl-propanolamine and ephedrine. Dr. McCoy testified that in order to determine the precise compound which was present, a second more precise test such as a Gas Chromatography/Mass Spectrometry test should have been done.

At this hearing, Seeley introduced considerable evidence on ephedrine and its effects on the body. Seeley also attempted to introduce evidence showing that Mini Thin tablets [1] contained ephedrine.[2] In so doing, Seeley was attempting to show that Jack could have inhaled Mini Thins, which would have resulted in the insomnia and hallucinations from which Jack had suffered, and further, that the drug screen was positive because of the presence of ephedrine in Jack's system. This is significant because Jack testified that he was told that the 'lines' which he was snorting were crushed-up Mini Thins. Seeley's intent was to show that he did not deliver methamphetamine to Jack, but rather, provided him with Mini Thins. Such a finding would support the reversal of Seeley's convictions.

I

*Propriety of Second Hearing*

After the time in which this court remanded the case to the post-conviction court to conduct further proceedings, but before the post-conviction court entered its findings of fact and conclusions of law, our Supreme Court decided that our practice of remanding appeals from the denial of post-conviction relief for the presentation of further evidence and to allow the petitioner to present new issues was improper. In *Bellamy v. State*, 765 N.E.2d 520, 521 (Ind.2002), our Supreme Court stated that a petitioner could not seek remand from the Court of Appeals without showing that the trial which was conducted contained reversible error. It was further noted that the petitioner simply wanted to "try the same issues again with different evidence." *Id.* Our Supreme Court deter-

---

1. It appears that Mini Thins are an over-the-counter product containing Ephedrine HCl, an amphetamine-like compound. They are labeled as a bronchodilator and expectorant. *See Green v. BDI Pharmaceuticals, Division of Body Dynamics, Inc.*, 803 So.2d 68 (La.Ct. App.2001).

2. At the hearing, Seeley attempted to introduce this evidence through Dr. McCoy. However, Dr. McCoy could not conclusively state that Mini Thins contained ephedrine. (App. 228) Seeley then requested that the post-conviction court allow him to supplement the record by presenting to the court at a later date a Mini Thins advertisement from 1995 which listed the ingredients. Seeley later tendered a copy of the Controlled Substance Act Drug Abuse/Misuse Report on Ephedrine by the Ohio State Board of Pharmacy which was published in 1996, which indicated that Mini Thins contained ephedrine in 1993. The post-conviction court denied the admission of the report. The denial of the admission of the report is one of the grounds upon which Seeley challenges the post-conviction court's decision.

mined that proper procedure was for the petitioner to file a request for leave to file a successive petition seeking post-conviction relief in the form required by the Indiana Post–Conviction Rules. *Id.* at 522.

■ The post-conviction court was aware of the *Bellamy* decision, and in announcing its findings of fact, conclusions of law, and judgment, noted the factual and procedural similarities between this case and *Bellamy*. The post-conviction court then determined that the matter was not properly remanded for the presentation of additional evidence. The post-conviction court also noted that the issue of ineffective assistance of Seeley's first post-conviction counsel was not properly before the court according to the holding of *Bellamy*. Nonetheless, the post-conviction court addressed Seeley's claims on the merits and determined that Seeley failed to meet his burden of proof.[3]

Seeley asserts that the post-conviction court erred in determining that *Bellamy* prohibited him from presenting additional evidence. He asserts that the cases are distinguishable because the State failed to seek transfer to the Supreme Court in this case, and therefore, any challenge to the motion for remand was waived.

We disagree. *Bellamy* clearly precludes this court from remanding cases to the post-conviction court for the presentation of further evidence or new issues without the finding of reversible error. Consequently, *Bellamy* precluded the post-conviction court from considering additional evidence and new issues in the subsequent hearing in this case because Seeley failed to follow the procedural requirements of the post-conviction rules. Based upon hindsight, our previous order to remand the case was improper in light of *Bellamy* and the post-conviction court did not err in refusing to accept the additional evidence and issues presented by Seeley at the second post-conviction hearing.[4]

Notwithstanding our holding that the post-conviction court did not err in refusing to accept the additional evidence at the second hearing, we also will address the merits of Seeley's claims of ineffective assistance of counsel.[5]

## II

### *Ineffective Assistance of Counsel*

■ Post-conviction proceedings do not afford a petitioner with an opportunity for a "super-appeal." *Ben–Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind.2000), *cert. denied* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002). Post-conviction proceedings provide an opportunity to raise issues which were not known to the peti-

---

**3.** In so doing, the post-conviction court did consider the evidence which was presented at the second hearing, in addition to taking judicial notice of all previous proceedings.

**4.** Seeley contends that because he would prevail if forced to file a successive petition, judicial economy weighs in favor of this court deciding his case on the merits. For support, he cites to Justice Rucker's dissent in *Bellamy*. 765 N.E.2d at 522. While we fully appreciate the doctrine of judicial economy, the majority of our Supreme Court has clearly spoken on the issue.

**5.** We do not address the merits of Seeley's claim that the post-conviction court should

have accepted into evidence the report on abuse/misuse of ephedrine. The admission of new evidence in the second hearing was not properly before the post-conviction court. However, solely for the purpose of addressing his argument regarding ineffective assistance of counsel, we will accept his contention that Mini Thins contained ephedrine in 1995. We have chosen to address the merits of Seeley's claim of ineffective assistance of counsel because that issue was properly before the post-conviction court in the first hearing and this is the second time that the issue has been brought before this court.

tioner at the time of the original trial or were not available upon direct appeal. *Id.* The petitioner must establish his grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). When the petitioner is appealing from a denial of relief on a claim with which he had the burden of proof, he is appealing from a negative judgment. *Ben–Yisrayl,* 738 N.E.2d at 258. In a post-conviction setting, the petitioner must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to that reached by the post-conviction court. *Id.*

To prove a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient in that representation fell below an objective standard of reasonableness, committing errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. *McCary v. State,* 761 N.E.2d 389, 392 (Ind.2002), *reh'g denied.* The petitioner must also show prejudice, that is, a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.*

### A. Trial Counsel

■ Seeley contends that his trial counsel was ineffective for failing to investigate the meaning of a drug screen, failing to investigate Jack's military record, and failing to move to suppress the methamphetamine found in the search of the trailer. The issue of ineffective assistance of trial counsel was presented to this court in a direct appeal and is barred from being relitigated. *McCary,* 761 N.E.2d at 392 (noting that it has long been held that when a claim of ineffective assistance of trial counsel is brought on direct appeal, the defendant is foreclosed from subsequently relitigating that claim); *Bieghler v. State,* 690 N.E.2d 188, 200–01 (Ind.1997) (noting that even though some of petitioner's arguments respecting trial counsel's performance were new arguments about aspects previously considered on direct appeal, and others focused on aspects not mentioned on direct appeal, the issue of whether trial counsel was ineffective could not be relitigated), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998).[6]

In order to overcome the bar against relitigation, Seeley attempts to convince this court to apply a standard which allows federal courts to consider subsequent petitions for writ of habeas corpus when an individual who has been sentenced to death raises a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claims. *See Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). It is unclear how Seeley believes that his reference to this federal standard applies to this court. In his brief, Seeley directs this court to *State v. Huffman,* 643 N.E.2d 899 (Ind. 1994). In so doing, he quotes our Supreme Court which has stated that "[f]inality and fairness are both important goals. When faced with an apparent conflict between them, this Court unhesitatingly chooses the latter." *Id.* at 901. However,

---

**6.** In both *McCary* and *Bieghler* our Supreme Court appears to use the terms res judicata and law of the case interchangeably. However, the same court, in *State v. Lewis,* 543 N.E.2d 1116, 1118 (Ind.1989), in an extensive discussion noted the difference between the doctrines and that the law of the case doctrine was to be applied within the discretion of the reviewing court so that a court could review prior decisions of its own or a coordinate court if circumstances warranted such review. Be that as it may, it appears that whether the term res judicata or law of the case is used to describe an issue previously decided, in extraordinary circumstances a subsequent reviewing court may revisit the issue.

Seeley did not cite to the most relevant language from *Huffman,* that is, that courts have "always maintained the option of reconsidering earlier cases in order to correct error." *Id. See also* footnote 5, *supra.* According to *Huffman,* this court may revisit prior decisions, although we should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice. *Id.* Therefore, to the extent that we may review a claim which would otherwise appear barred, we do so according to the guidance of *Huffman.* Suffice it to say, however, that Seeley has not convinced this court that our prior decision regarding ineffective assistance of trial counsel is clearly erroneous and works a manifest injustice. The reasoning behind this decision will be explained in further detail in our discussion of Seeley's claim of ineffective assistance of appellate counsel.

### B. Appellate Counsel

■ "The Sixth Amendment entitles a criminal defendant to the effective assistance of counsel not only at trial, but during his first appeal as of right." *Ben-Yisrayl,* 738 N.E.2d at 260. Although we have generally considered claims of ineffective assistance of trial and appellate counsel as analogous, there are significant differences between the roles of appellate and trial counsel. *Id.* When reviewing a claim of ineffective assistance of appellate counsel regarding the selection and presentation of issues, the defendant must overcome the strongest presumption of adequate assistance. *Id.* at 260–61. In determining whether appellate counsel's performance was deficient, we consider the information available in the trial record or otherwise known to appellate counsel. *Id.* at 261. The role of appellate counsel should not be measured by information unknown to appellate counsel but later developed after the appeal by post-convic-

tion counsel. *Id.* To prevail upon the claim of ineffective assistance of appellate counsel, the petitioner must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. *Id.*

■ When the issue of ineffective assistance of appellate counsel is based upon appellate counsel's failure to properly raise and support a claim of ineffective assistance of trial counsel, the petitioner faces a compound burden. *Id.* at 262. Petitioner must demonstrate that appellate counsel's performance was deficient and that, but for the deficiency of appellate counsel, trial counsel's performance would have been found deficient and prejudicial. *Id.* The petitioner must establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel. *Id.*

■ The State contends that Seeley cannot prove his claim of ineffective assistance of appellate counsel for failure to properly argue ineffective assistance of trial counsel because the issue of ineffective assistance of trial counsel is "res judicata." Appellee's brief at 9. For support, the State cites *Sims v. State,* 771 N.E.2d 734 (Ind.Ct.App.2002), *trans. denied.* In *Sims,* a panel of this court, relying upon our Supreme Court's decision in *Allen v. State,* 749 N.E.2d 1158 (Ind.2001), *cert. denied,* 535 U.S. 1061, 122 S.Ct. 1925, 152 L.Ed.2d 832 (2002), determined that petitioner's claim of ineffective assistance of trial counsel was barred, and therefore, his claim of ineffective assistance of appellate counsel could not succeed. 771 N.E.2d at 742–43. In *Davis v. State,* 775 N.E.2d 1182 (Ind.Ct.App.2002), *trans. pending,* a different panel of this court relied upon

*Sims* in holding that the petitioner's claim of ineffective assistance of appellate counsel was precluded because he had challenged the effectiveness of trial counsel on direct appeal.

We respectfully disagree with these decisions. Our Supreme Court has addressed the issue of ineffective assistance of appellate counsel regarding claims of ineffective assistance of trial counsel on many occasions after finding that the issue of ineffective assistance of trial counsel was closed. *See, e.g., McCary,* 761 N.E.2d at 392–95; *Timberlake v. State,* 753 N.E.2d 591 (Ind.2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002); *Ben–Yisrayl,* 738 N.E.2d at 262–67. A close reading of *Allen* also leads to the conclusion that our Supreme Court did not intend to preclude claims of ineffective assistance of appellate counsel when claims of ineffective assistance of trial counsel are precluded. In *Allen,* our Supreme Court held that Allen could not show that appellate counsel was ineffective because the record did not show that trial counsel was deficient in regard to the issues upon which Allen relied to prove ineffective assistance of appellate counsel. 749 N.E.2d at 1169. Further, after determining that the issue of ineffective assistance of trial counsel could not be presented for post-conviction relief because it was presented on direct appeal, the Supreme Court reviewed in great detail several instances of alleged trial counsel error. *Id.* at 1166–76. This was done in order to determine whether Allen could establish the burden that trial counsel was ineffective for the purpose of establishing part of the showing for ineffective assistance of appellate counsel. *Id.* at 1169. We do not believe that our Supreme Court intended to preclude the very review which it undertook in that case.

Turning now to the merits of Seeley's claims, Seeley asserts that appellate counsel was ineffective for raising nonmeritorious issues and failing to raise meritorious ones. Specifically, he contends that appellate counsel should have argued that the search conducted on Seeley's semi-trailer, which resulted in the seizure of methamphetamine which was admitted as evidence at trial, was stale in that it took place at least 31 days after the alleged offense and that the evidence was not relevant to the crime charged. He further contends that appellate counsel was ineffective by "miss[ing] obvious issues which required exploration outside the record." Appellant's Brief at 22.

 Regarding Seeley's assertions related to the search, we note that the drugs seized in the semi-trailer were relevant to the case as they substantiated Jack's claim that he snorted methamphetamine and made it more probable that the positive drug screen and the hallucinations and insomnia from which Jack suffered were caused by methamphetamine. *See* Ind. Evidence Rule 401 (relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence). Additionally, the information upon which the search was based was not stale.

 The general rule is that stale information cannot support a finding of probable cause, but rather, only gives rise to a mere suspicion. *State v. Haines,* 774 N.E.2d 984, 990 (Ind.Ct.App.2002), *reh'g denied.* This is true especially when the items to be obtained in the search are easily concealed and moved. *Id.* Additionally, the exact moment when information becomes stale cannot be precisely determined. *Id.*

The search was conducted upon a semi-trailer in which Seeley had a workbench and kept various tools. Seeley's mother testified that she owned the semi-trailer and that she had not been keeping it locked. She further stated that several people who borrowed tools from her husband had access to the semi-trailer. Jack testified that he had seen the semi-trailer locked on previous occasions but that it was not locked during the time that he was working for Seeley. However, Jack also testified that neither Seeley nor anyone else allowed persons to go into the semi-trailer. Jack also testified that when Seeley gave them the lines to snort that Seeley would put it on mirrors which were in the semi-trailer.

At the probable cause hearing, Officer Gary Hoskins testified relative to Jack's information concerning the use of the mirrors to snort the lines of methamphetamine. Following the hearing, the trial court issued a warrant authorizing the search of the semi-trailer for the purpose of locating the mirrors which contained residue of a controlled substance. Under these circumstances, we are not convinced that trial counsel was ineffective in failing to present the issue of an invalid warrant because of stale information. While the passing of approximately one month between the alleged conduct and the probable cause hearing does raise some concerns, it is not dispositive of the issue. The search was not for drugs which were used at that time, but rather for mirrors which contained drug residue. It is logical to conclude that the mirrors could still contain drug residue and that they could still be located in the semi-trailer which was used for storage. This information was not so stale as to invalidate a finding of probable cause and issuance of a warrant for residue contained upon mirrors.

■ Seeley's claim that appellate counsel was ineffective for failing to discover evidence outside of the record must fail. As stated in *Ben–Yisrayl*, we review appellate counsel's performance based upon the information *in the trial record or known to appellate counsel.* 738 N.E.2d at 261. The information which Seeley believed should have been admitted required factual research outside of the record, and there is no reasonable contention that appellate counsel had knowledge of those facts. To the extent that Seeley's contention can be read as asserting that appellate counsel should not have raised the issue of ineffective assistance of trial counsel, it too fails because Seeley cannot show that the result at trial would have changed had the issues been properly presented.

■ Assuming arguendo that all of the facts which Seeley attempted to admit at the second post-conviction hearing are true, the evidence does not establish a reasonable probability that the result of the trial would have been different.[7] Jack testified that even though he was told that the substance consisted of crushed up Mini Thins, he believed that it was methamphetamine because he had heard that Seeley used methamphetamine. Additionally, he testified that Seeley gave him a substance which looked like the methamphetamine which was recovered during the search of the semi-trailer and that the substances were packaged in the same manner. Also, even though the drug screen was not conclusive to the presence

---

7. These facts are that Mini Thins contained ephedrine in 1995, that ephedrine can cause the physical and psychological effects suffered by Jack, that one would have to ingest a significant amount of ephedrine compared to methamphetamine to cause that effect, and that the drug screen did not conclusively determine that the compound in Jack's system was methamphetamine.

of methamphetamine in Jack's system, the presence of methamphetamine would give a positive result. Additionally, Dr. McCoy testified that he could not recall whether he had looked at the product insert for the drug screen which was performed, and therefore, could not indicate whether the particular test would give a positive result for ephedrine. He also stated that improvements are made to the tests and that the "cross-reactivity" of a test may change. Appendix at 229. Dr. McCoy also testified that one would most likely have to inhale ephedrine in a quantity three to five times greater than the amount of methamphetamine to get the same effect. While the testimony did indicate that the parties inhaled several lines each day, it did not indicate that vast quantities were used, such as would cause one to conclude that the parties could not have been using methamphetamine.

Based upon this evidence, Seeley did not establish that he was prejudiced by the performance of his trial counsel. The evidence, viewed as a whole, does not unmistakably and unerringly lead to the conclusion that Seeley delivered ephedrine and not methamphetamine.

The decision of the post-conviction court is affirmed.

SHARPNACK, J., and KIRSCH, J., concur.